Mary B. McCord*
mbm7@georgetown.edu
Amy L. Marshak*
Annie L. Owens*
Jennifer Safstrom*
Seth Wayne*
INSTITUTE FOR CONSTITUTIONAL
    ADVOCACY AND PROTECTION
Georgetown University Law Center
600 New Jersey Ave., N.W.
Washington, D.C.  20001
Tel.:  (202) 662-9042
Fax:  (202) 662-9248

* *Admission Pro Hac Vice Pending*

Wendy J. Olson, ISB No. 7634
wendy.olson@stoel.com
Elijah M. Watkins, ISB No. 8977
elijah.watkins@stoel.com
STOEL RIVES LLP
101 S Capitol Boulevard, Suite 1900
Boise, ID  83702
Telephone:  208.389.9000
Facsimile:  208.389.9040


*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| AHNIAH SELENE; KASSIE HOWE; DISABILITY ACTION CENTER – NORTHWEST, INC.; DISABILITY RIGHTS IDAHO; LIVING INDEPENDENCE NETWORK CORPORATION IDAHO; LIFE, A CENTER FOR INDEPENDENT LIVING; AND INTERMOUNTAIN FAIR HOUSING COUNCIL,<br><br>                    Plaintiffs,<br><br>    v. | Case No.<br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 1

LEGISLATURE OF THE STATE OF
IDAHO,

SCOTT BEDKE, in his official capacity
as Speaker of the House of
Representatives of the State of Idaho,

CHUCK WINDER, in his official capacity
as President Pro Tempore of the Idaho
State Senate,

                    Defendants.

Plaintiffs Ahniah Selene; Kassie Howe; Disability Action Center – Northwest, Inc.; DisAbility Rights Idaho; Living Independence Network Corporation Idaho; Life, A Center for Independent Living; and Intermountain Fair Housing Council allege as follows:

## INTRODUCTION

1.      Plaintiffs Ahniah Selene; Kassie Howe; Disability Action Center – Northwest, Inc.; DisAbility Rights Idaho; Living Independence Network Corporation Idaho; Life, A Center for Independent Living; and Intermountain Fair Housing Council bring this action for declaratory and injunctive relief to vindicate their federal rights under the First Amendment to the United States Constitution, the Americans with Disabilities Act of 1990, and the Rehabilitation Act of 1973. By implementing and enforcing a policy that denies basic protections for the health and safety of all persons wishing to attend, observe, and participate in the Idaho Legislature's proceedings, Defendants have prevented and are continuing to prevent Plaintiffs from exercising their fundamental rights to participate in the legislative process.

2.      Plaintiffs are disability-rights advocacy organizations, their members, volunteers, boards of directors, staff, and individuals with disabilities who frequently attend the Idaho legislative sessions, meet with legislators, and testify at Idaho Legislature committee hearings on issues that affect individuals with disabilities and their communities. Of critical importance to

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 2

Plaintiffs, proposed Medicaid cuts, attempts to repeal Medicaid expansion, and lack of direct care workers due to low wages and the pandemic will all be on the 2021 legislative agenda.  In addition, Plaintiffs have an interest in being heard on legislative issues including access to rural transportation and rural internet; proposed changes to guardianship, civil commitment, and other rights in facilities statutes; proposed legislation for the creation of new facilities with or without licensing schemes; Idaho landlord-tenant law; and the Idaho Human Rights Act.

3.      But Plaintiffs or their members have disabilities that make them particularly susceptible to complications from COVID-19.  They cannot safely exercise their First Amendment rights during the 2021 legislative session to petition their government on these and other issues unless public-health measures to minimize the risk of COVID-19 transmission are in place.

4.      Because Defendants have adopted a policy and engaged in practices that deny basic safeguards for public health and safety in areas of the Capitol controlled by the Legislature, Plaintiffs are now unable to testify at committee hearings or otherwise participate fully in the legislative process without substantial risk to their own health and safety.  This past summer, for example, Plaintiffs were effectively prevented from participating in the Idaho Legislature's special session when Defendants allowed unmasked individuals to crowd the Capitol's hallways and committee rooms, repudiating social distancing and other health protocols.  In addition, Defendants' decision to allow armed unlawful private militias and individuals armed with long guns at the special session raised serious security concerns and created an intimidating and hostile environment, especially for individuals with disabilities, further preventing Plaintiffs' participation in the legislative process.

5.      "The very idea of a government, republican in form, implies a right on the part of its citizens to meet peaceably for consultation in respect to public affairs and to petition for a

redress of grievances." *United States v. Cruikshank*, 92 U.S. 542, 552 (1875).  Defendants' decision to admit individuals who refuse to take health precautions during a pandemic and who engage in intimidation and threatening behavior denies Plaintiffs this bedrock First Amendment right to petition their legislature for redress of grievances.

6.     In addition to abridging Plaintiffs' constitutional rights, Defendants are violating federal law—specifically, the Americans with Disabilities Act and the Rehabilitation Act.  Under these statutes, Defendants have an obligation to implement reasonable modifications to their policies and practices that allow Plaintiffs to participate fully in the legislative process without harm to their health.

7.     Absent declaratory and injunctive relief, these violations of Plaintiffs' rights will continue, and their voices will not be heard on vital issues such as access to Medicaid and other critical health services during the 2021 legislative session, which begins on January 11, 2021.

## JURISDICTION AND VENUE

8.     Pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), this Court has subject-matter jurisdiction over Plaintiffs' claims arising under 42 U.S.C. § 1983; the First and Fourteenth Amendments to the United States Constitution; the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.*; and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, *et seq.*

9.     The relief requested is authorized under 28 U.S.C. §§ 1651 (All Writs Act), 2201 (Declaratory Judgment Act), 2202 (Further Relief); 42 U.S.C. § 12133 (ADA); and 29 U.S.C. § 794a(b) (Rehabilitation Act).

10.    Venue is proper in the District of Idaho under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this district and because the Idaho State Capitol and the offices of Defendants are located in this district.

## PARTIES

11.     Plaintiff Ahniah Selene is a resident of Boise, Idaho.  Selene is a frequent participant in and observer of the Idaho legislative process, providing testimony in committee hearings several times over the past four years and documenting legislative activity on camera for public dissemination.  The unsafe conditions at the August 2020 special session of the Legislature prevented him from attending legislative proceedings in the State Capitol, and Defendants' decision to permit those conditions to persist will continue to prevent him from participating in the legislative process unless corrective action is taken.

12.     In 1986, Selene was in a car accident that resulted in a spinal cord injury and in paralysis from his shoulders down.  As a quadriplegic, Selene uses a power chair for mobility, and his lung capacity is severely diminished.  He has asthma, which requires the use of inhalers, 24-hour nebulization treatment, and the use of both oxygen and continuous positive airway pressure ("CPAP") machines at night.  Occasionally he must excuse himself from community events to address his health issues.

13.     These conditions place Selene at an elevated risk of severe complications if he were to contract COVID-19.  Accordingly, Selene cannot attend or participate in the legislative process at the Idaho State Capitol without adequate health and safety protocols designed to minimize the risk of COVID-19 transmission.  In addition to these concerns about his health, Selene is concerned for his physical safety in the committee rooms and adjacent areas because of the unruly armed crowds that dominated the special session in August.  Selene did not attend the special session because of the inadequate COVID-19 safety protocols and the presence of armed individuals engaging in intimidation and violent conduct.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 5

14.     Selene intends to attend the 2021 legislative session to observe and express his views on matters that directly affect him as a citizen of Idaho, including on issues affecting health care and housing.  But he will be unable to do so if Defendants' policies and practices are not modified to create safe conditions for attendance.

15.     Plaintiff Kassie Howe is a resident of the Treasure Valley in Idaho.  She has lived in Idaho her entire life, having moved to the Treasure Valley from southeast Idaho in 2016.  In or around 2018 she was diagnosed with Major Depressive Disorder, Post-Traumatic Stress Disorder, and Dissociative Identity Disorder. These mental health diagnoses result in severe anxiety.

16.     To address these disorders, Plaintiff Howe employs a psychiatric service dog named Lily.  Lily's role is to help remove Howe from public spaces if she senses that Howe is beginning to have an episode of disassociation or panic.  Lily also stands between Howe and other persons in order to see that she has adequate spacing when in public.

17.     In or around October 2020, Howe was diagnosed with autoimmune ulcerative colitis, an autoimmune disorder that inflames Howe's digestive tract.  To address this disability, Howe takes medications that limit the functioning of her immune system.  Being immunocompromised, Howe is more susceptible to contracting viruses and suffering adverse effects from them, including COVID-19.

18.     Howe is a member of the board of directors of DisAbility Rights Idaho.  In that capacity and as a private citizen, Howe intends to participate in the legislative session, including attending hearings and offering testimony on topics important to Idahoans with disabilities and their families.  However, because of her autoimmune disease, Howe cannot attend or participate if there are inadequate safety protocols against COVID-19.

19.     In addition, Howe has mental health and safety concerns with attending because of the unruly crowds at the special session in August.  Large numbers of unmasked individuals were allowed to be present with little or no control, overriding the minimal social distancing that was in place and occupying seats and space intended to remain unoccupied for social distancing reasons. Such crowds make it difficult for Howe to stay physically safe because she is immunocompromised, and the crowds make it impossible for Lily to do her job in seeing that Howe has adequate space in support of her mental health diagnosis.

20.     Plaintiff Disability Action Center – Northwest, Inc. ("DAC") is a 501(c)(3) nonprofit organization with offices in Lewiston, Moscow, and Post Falls, Idaho.  DAC serves the Northwest Idaho disability community in a variety of ways, including providing information and referral assistance, individual and systems advocacy, peer counseling, independent living skills training, and transition services to help individuals move from institutions into community living; helping youth transition to adult life; and helping individuals avoid institutionalization.  DAC's volunteer Board of Directors comprises a majority of persons with a significant disability as defined in Title VII of the Rehabilitation Act of 1973 and subsequent amendments, and most of its staff and volunteers also have a disability.

21.     DAC has participated in educational events at the Idaho State Capitol a number of times over the past several years, both in the form of public testimony and individual meetings with legislators.  Indeed, one of DAC's core services is engaging in systems and individual advocacy, which often involves working with individuals with a disability to assist them with self-advocacy skills, including teaching them how to testify at public policy proceedings and accompanying them to hearings.  DAC itself also provides input on public policy decisions that may affect people with a disability.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 7

22.     In the 2021 legislative session, DAC wishes to provide educational resources and testimony on a number of issues before the Idaho Legislature, including Medicaid financing, rural public transportation access, and rural internet services.

23.     At this time, however, because Defendants' policies and practices have resulted in unsafe conditions at the Legislature, DAC is effectively unable to be involved in advocacy and other activities at the Legislature, frustrating its organizational mission and harming its members. DAC's executive director, who is over the age of 65, is at higher risk of complications from COVID-19, as are many of DAC's staff members and the individuals they serve due to disabilities such as anxiety, depression, and various physical disabilities.  Accordingly, it is not safe for these individuals to attend legislative proceedings in person or testify at committee hearings without adequate health and safety protocols, which has frustrated DAC's advocacy mission.  DAC therefore has had to divert its scarce resources to other less effective methods of advocacy. Moreover, the individuals that DAC serves and whose interests it seeks to protect also have been unable to effectively advocate before the Legislature, as they would have, with DAC's assistance, if they could safely do so.

24.     Plaintiff DisAbility Rights Idaho ("DRI") is a 501(c)(3) nonprofit organization with offices in Boise and Pocatello, Idaho.  DRI is Idaho's designated Protection and Advocacy System for people with disabilities.  As such, DRI assists people with disabilities to protect, promote, and advance their legal and human rights, through quality legal, individual, and system advocacy.  DRI is governed by a Board of Directors, a majority of whose members must be persons with a disability.

25.     DRI represents people with disabilities of all ages and serves clients with blindness, deafness, Autism Spectrum Disorder, Traumatic Brain Injury, mental illness, physical and

intellectual disabilities, and many others.  Because of their disabilities, many of these individuals are at a heightened risk of severe illness or death because of COVID-19.

26.     One of DRI's core missions is to participate in systemic advocacy that protects and promotes the rights of adults with disabilities.  This advocacy includes reviewing and analyzing proposed legislation on these topics and informing and educating legislators and the public on the impact of the legislation.  In the past, DRI has provided testimony to the Idaho Legislature and attended events at the Capitol Building to educate legislators on issues that affect individuals with disabilities.

27.     During the 2021 session, individual members, staff, employees, and leaders of DRI wish to educate and testify before the Legislature on issues including potential cuts to Medicaid; challenges to Medicaid expansion; proposed changes to guardianship, civil commitment, and other rights in facilities statutes; and proposed legislation for the creation of new facilities with or without licensing schemes.  DRI also wishes to participate Fred Riggins Day at the Capitol, as it has in the past.

28.     However, because Defendants' policies and practices have resulted in unsafe conditions at the Legislature, DRI's advocacy staff, DRI's board members, and the families and individuals whom DRI serves will be prevented from appearing at the Idaho Capitol to testify and educate on these and other issues, frustrating DRI's advocacy mission and harming its members.

29.     For example, Jane Doe 1 is a DRI board member who has testified before the Idaho Legislature multiple times in the past.  She has cerebral palsy, uses a motorized wheelchair, and has severe scoliosis, which restricts her breathing and places her at high risk of complications from COVID-19.  Although she intended to testify before the Legislature this year about proposed cuts

to Medicaid, she cannot do so because Defendants' health and safety protocols deny adequate protection.

30.     Jane Doe 2 is a DRI staff member.  A member of her household has long-term disabilities and is at high risk of complications from COVID-19.  Jane Doe 2 therefore is not able to appear before the legislature given Defendants' policy and practices that deny adequate health and safety protections.

31.     John Doe is a DRI staff member who is at increased risk of severe complications from COVID-19 because he has cerebral palsy and a compromised immune system.  He cannot go to the Idaho Legislature this session to participate as a DRI employee due to Defendant's denial of basic health and safety protections.

32.     Indeed, because of the unsafe environment resulting from Defendants' policies and practices, DRI's executive director, Amy Cunningham, will not allow anyone from DRI— especially individuals with disabilities—to go to the Idaho Legislature this year out of concern that they may contract COVID-19.

33.     Because DRI and the individuals it serves cannot advocate during this legislative session due to Defendants' policies, DRI has had to divert its scarce resources to other less effective methods of advocacy.

34.     Plaintiff Living Independence Network Corporation ("LINC") Idaho is a 501(c)(3) nonprofit organization with offices in Boise, Caldwell, and Twin Falls, Idaho.  LINC provides a wide array of services to individuals with disabilities to help them live independent lives of their own choosing.  LINC's services include information and referrals, youth and adult institutional diversion and transitions, adaptive technology and ramp loans, independent living training, peer-to-peer mentoring, self and systems advocacy, and self-directed in-home care personal assistant

services.  LINC's board of directors, staff and volunteers include persons with disabilities, including physical disabilities such as quadriplegia and mental health disabilities such as anxiety and depression.

35.     LINC's board, staff, and individuals with disabilities whom LINC serves actively participate in the legislative process at the Idaho Capitol, including attending committee hearings, providing testimony, and meeting with legislators.  Over the past few years, they have given testimony on savings account programs for people with disabilities, legislation related to credentialing American Sign Language interpreters, and bills related to service dogs.  In addition, they have recently participated in workgroups and rules discussions on Medicaid for workers.

36.     In the 2021 legislative session, LINC wishes to provide testimony and engage in advocacy on issues related to the need for increased wages for direct care workers and proposed cuts to Medicaid, which would have an outsized impact on the individuals with disabilities whom LINC serves.

37.     Because Defendants' policies and practices have resulted in unsafe conditions at the Legislature, LINC's advocacy staff, LINC's board members, and the families and individuals whom LINC serves will be prevented from appearing at the Idaho Capitol to testify on these and other issues, frustrating LINC's organizational mission.  These individuals have disabilities that make them more susceptible to severe complications from COVID-19, including quadriplegia, other physical disabilities, mental health disabilities and developmental disabilities.  Because LINC and the individuals it serves cannot advocate during this legislative session due to Defendants' policies, LINC has had to divert its scarce resources to other less effective methods of advocacy.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 11

38.     Plaintiff Life, an Independent Living Center, is a 501(c)(3) nonprofit organization with offices in Blackfoot, Burley, Idaho Falls, and Pocatello, Idaho.  Life provides services to empower people with disabilities to help them manage their own lives, make their own choices, and give them the information and knowledge to assist them to live with independence.  Life's board of directors, staff, and volunteers include persons with disabilities, including physical disabilities such as quadriplegia and mental health disabilities such as anxiety and depression.

39.     Life's board, staff, and individuals with disabilities whom Life serves have actively participated in the legislative process at the Idaho Capitol in past years, including attending committee hearings, providing testimony, and meeting with legislators.

40.     These Life board members, staff, and individuals wish to participate in the 2021 legislative session in a similar fashion.

41.     Life board members, staff, and individuals are unable to participate in the 2021 legislative session because of their increased susceptibility to complications should they contract COVID-19.

42.     Plaintiff Intermountain Fair Housing Council ("IFHC") is a nonprofit organization whose mission is to ensure open and inclusive housing for all persons without regard to race, color, sex, religion, national origin, familial status, sexual orientation, gender identity, a source of income, or disability.  IFHC attempts to eradicate discrimination through education and advocacy on fair housing laws, housing information and referral, housing counseling, and assistance with mediating and or filing fair housing complaints, among other services.

43.     IFHC has testified before the Idaho Legislature several times in the past on issues related to fair housing bills and civil rights issues involving protected classes, including individuals with disabilities.  Specifically, IFHC staff, board members, volunteers, interns, and ambassadors

have educated legislators about the impacts of legislation on housing and civil rights issues and support other community members, leaders, and organizations in their efforts to create a just community including for people with disabilities.  IFHC annually participates in Fred Riggins Disability Awareness Day and other education events.

44.    IFHC staff, ambassadors, and volunteers did not attend the special session as they would have and have done in the past because IFHC staff, ambassadors, and volunteers felt intimidated by events and the threat to their health and safety or the threat to the health of loved ones, roommates, partners, and the people whom they serve by being exposed to COVID-19.

45.    In the 2021 legislative session, IFHC wishes to speak before the Legislature about changes to Idaho landlord-tenant law, the Idaho Human Rights Act, and the history of housing discrimination.  The organization has highlighted the unique impact of housing equity issues on protected classes, including individuals with disabilities, in its fair housing and fair community advocacy.

46.    IFHC has staff members, volunteers, and board of director members who would testify but for the inadequate COVID protocols.  Some are in wheelchairs as a result of their disabling condition, and others have disabilities that affect breathing.

47.    Because Defendants' policies and practices have resulted in unsafe conditions at the Legislature, IFHC's advocacy mission has been frustrated.  IFHC has had to expend resources that it otherwise would not have had to expend to enable their staff to participate in the legislative session and to enable the participation of housing advocates, including individuals with disabilities.  For example, IFHC has had to develop advocacy protocols compliant with health guidance and will need to purchase protective equipment, and IFHC has expended staff time in coordinating with sister groups to prepare for safety plans to testify.  IFHC would otherwise be

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 13

spending this time and these resources on other functions central to its mission, including providing its members with education on fair housing laws, housing information and referral, housing counseling, and assistance with mediating or filing fair housing complaints, among other community services.

48.     Defendant Legislature of the State of Idaho ("Legislature") is a state governmental entity vested with the legislative power of the State of Idaho under Article III, section 1 of the Idaho Constitution.  The Legislature comprises the House of Representatives of the State of Idaho and the Idaho State Senate.  Idaho law provides that the Legislature controls and determines the use of certain space within the Capitol Building, including the legislative chambers, public galleries, committee rooms, and adjacent hallways.  Idaho Code § 67-1602(3).  The Legislature recently received federal funds pursuant to the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116-136 (2020), of which some portion was spent on information technology services for the Legislature.

49.     Defendant Scott Bedke is the Speaker of the House of Representatives of the State of Idaho.  Bedke is an officer of the Idaho House of Representatives pursuant to Article III, section 9 of the Idaho Constitution.   Bedke is responsible for adopting and implementing policies governing public access to the areas of the Capitol Building controlled by the Idaho House of Representatives and to hearings conducted by House committees.

50.     Defendant Chuck Winder is the President Pro Tempore of the Idaho State Senate. Winder is an officer of the Idaho Senate pursuant to Article III, section 9 of the Idaho Constitution. Winder is responsible for adopting and implementing policies governing public access to the areas of the Capitol building controlled by the Idaho Senate and to hearings conducted by Senate committees.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 14

## BACKGROUND

**Legal Framework**

51.      The First Amendment to the United States Constitution protects all Idahoans' rights to participate in the legislative process, including the rights to petition the Legislature for redress of grievances and to speak in committee hearings.[1]   In addition, federal law provides specific protections for individuals with disabilities, including Plaintiffs and their members, ensuring equal access to state facilities and government proceedings and prohibiting discrimination.

52.      As the Supreme Court of the United States has long recognized, the First Amendment protects individuals' rights "to meet peaceably for consultation in respect to public affairs and to petition for a redress of grievances." *United States v. Cruikshank*, 92 U.S. 542, 552 (1875).   By virtue of the Fourteenth Amendment, states may not prevent individuals from exercising this fundamental right. *De Jonge v. Oregon*, 299 U.S. 353, 364 (1937).   "[P]eaceably expressing . . . grievances" to legislative bodies is "an exercise of these basic constitutional rights in their most pristine and classic form." *Edwards v. South Carolina*, 372 U.S. 229, 235 (1963).

53.      In addition to these constitutional protections, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, *et seq.*, protect the rights of individuals with disabilities by guaranteeing equal access to government activities and prohibiting discrimination on account of their disabilities.

54.      Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services,

---

[1] Although this Complaint states claims under the federal Constitution, the Idaho Constitution contains parallel guarantees.  *See* Idaho Const. Art. I, § 9 ("Every person may freely speak, write and publish on all subjects[.]"); § 10 ("The people shall have the right to assemble in a peaceable manner, to consult for their common good; to instruct their representatives, and to petition the legislature for the redress of grievances.").

programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42

U.S.C. § 12132.  Similarly, Section 504 of the Rehabilitation Act provides in relevant part, "[n]o

otherwise qualified individual with a disability in the United States . . . shall, solely by reason of

her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected

to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C.

§ 794(a).

      55.     Under the ADA and the Rehabilitation Act, a "disability" is "a physical or mental

impairment that substantially limits one or more major life activities of such individual."  42 U.S.C

§ 12102(1)(a); *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1088 (9th Cir. 2001).  The

Centers for Disease Control and Prevention have identified a number of conditions, including

disabilities under the ADA and Rehabilitation Act, that place individuals at higher risk of severe

illness or death from COVID-19.[2]

      56.     "[A]ny department, agency, special purpose district, or other instrumentality of a

State or States or local government" is a "public entity" subject to Title II of the ADA.  42 U.S.C.

§ 12131(1)(B).  A government entity that has "receiv[ed] Federal financial assistance" falls within

the scope of Section 504 of the Rehabilitation Act.  29 U.S.C. § 794(a).

      57.     Public entities for purposes of the ADA, and recipients of federal funds for the

purposes of the Rehabilitation Act, must ensure that their services, programs, and activities are

inclusive of and accessible by, and do not discriminate against, qualified individuals with

disabilities.  *See generally* 28 C.F.R. § 35.130; *id.* § 41.51.

---

[2] *COVID-19: People with Certain Medical Conditions*, Centers for Disease Control and
Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 16

58.     "Rather than determining whether each function of a [public entity] can be characterized as a service, program, or activity for purposes of Title II," the Ninth Circuit has "construed the ADA's broad language," as well as similar language in the Rehabilitation Act, "[as] bring[ing] within its scope anything a public entity does." *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002) (internal quotation marks omitted; alterations in original).

**Factual Allegations**

59.     By implementing and enforcing a policy that denies basic protections for the health and safety of persons wishing to participate in the Idaho legislative process, Defendants are impermissibly excluding Plaintiffs from safely and fully participating in that process.  In doing so, Defendants have violated and are continuing to violate Plaintiffs' rights under the First Amendment and federal law.

60.     The Idaho State Capitol Building, which houses the Idaho Legislature, is "a public monument representing the spirit of Idaho's citizens, a symbol of Idaho's sovereignty and one of Idaho's most renowned landmarks."  Idaho Code § 67-1601(a).  It "is also one of the most vital and preeminent public buildings in Idaho, wherein the legislative department . . . maintain[s its] offices and perform[s its] constitutionally prescribed duties."  *Id.* § 67-1601(b).

61.     Consistent with the public character of the State Capitol, the Idaho Legislature maintains "an open legislative process.  All committee action on bills and amendments is conducted in open sessions and [the public] may attend any or all of these meetings."[3]

---

[3] *Testifying Before Legislative Committees*, Idaho Legislature, https://legislature.idaho.gov/resources/committeetestimony/.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 17

62.     Until recently, Plaintiffs have availed themselves of this guarantee to participate in the Idaho legislative process through advocacy in the halls and offices of the Capitol Building and testimony before legislative committees.

63.     For example, DAC staff has accompanied individual advocates during the session to provide testimony related to Medicaid coverage of dental services for people with a disability. Their staff members have attended an annual disability awareness educational day at the Capitol for the last several years, meeting with legislators both in and out of their district. On one occasion, DAC staff presented at a committee hearing and answered questions about parenting with a disability. Another plaintiff, IFHC, has provided testimony and educational materials regarding fair housing laws and practices. This advocacy critically implicates the rights of disabled Idahoans, including those experiencing housing insecurity or discrimination.

64.     More recently, however, Plaintiffs have been excluded from the legislative process, unable to participate safely given Defendants' implementation of a policy that denies adequate protections against COVID-19 and allows intimidation and threatening conduct to go unchecked during the legislative session.

65.     The United States is in the midst of a public-health crisis, with COVID-19 cases surging throughout the country, including in Idaho. As of January 10, 2021, Idaho had reported 149,667 cases of COVID-19, and 1,534 Idahoans have lost their lives to the virus.[4] Plaintiffs or their members have disabilities and preexisting conditions that make them more susceptible than the general population to serious complications and death from COVID-19. Indeed, compared to

---

[4] *Idaho COVID-19 Information Updated Daily*, Idaho Dep't of Health & Welfare, https://coronavirus.idaho.gov/ (last visited Jan. 11, 2021).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 18

the general population, individuals with disabilities are more likely to suffer severe complications or die from COVID-19.[5]

66.     Defendants control access to the areas of the Capitol Building occupied by the Legislature and have authority to establish and implement protocols regarding public access and participation in the legislative process.  Nonetheless, Defendants' current policies do not require the wearing of masks, social distancing, or other health precautions designed to mitigate the risk of exposure to COVID-19.  In addition, Defendants have chosen to allow unlawful private militia groups and individuals to use firearms to intimidate and coerce legislators and members of the public in the legislative chambers and committee rooms.  Under Defendants' current policies, therefore, Plaintiffs must make an impossible choice between exercising their fundamental rights to participate in the legislative process and protecting their personal health and safety.

67.     Plaintiffs already faced this dilemma during the August 2020 special legislative session.  During that session, maskless armed spectators forced themselves into the Legislature, "shattering a glass door, rushing into the gallery that had limited seating because of the virus, and forcing lawmakers to ask for calm in a crowd that included a man carrying an assault-style

---

[5] *See, e.g.*, *Special considerations for people with physical disabilities during the COVID-19 pandemic*, Mayo Clinic (June 5, 2020), https://perma.cc/D3MF-JNRD ("[p]eople who use wheelchairs face increased risk of exposure to COVID-19" because "[t]heir heads are lower than those of people who are standing," making them more susceptible to falling respiratory droplets "produced when an infected person coughs, sneezes or talks"); Shaun Heasley, *People With Down Syndrome 10 Times More Likely To Die From COVID-19*, DisabilityScoop (Oct. 28, 2020), https://perma.cc/5WJM-5FNW; Laura Laughead, *Experts, new studies say people with developmental disabilities are at greater risk of dying of COVID-19*, Nexar (Nov. 17, 2020), https://perma.cc/VVF7-M7GX ("people with developmental disabilities could be up to six times more likely to die of COVID-19 complications"); Joseph Shapiro, *COVID-19 Infections And Deaths Are Higher Among Those With Intellectual Disabilities*, NPR (June 9, 2020), https://perma.cc/5ZMT-2UFF (individuals with developmental disabilities are four times more likely to contract COVID-19 and twice as like to die from the virus).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 19

weapon."[6]  Both in the "full gallery" and "packed committee rooms," these individuals "ignored social distancing," causing one representative to walk out of a committee meeting "citing unsafe conditions."[7]

68.     This chaotic, unsafe environment has substantially chilled Plaintiffs' ability to participate in the legislative process.  Indeed, Plaintiffs ordinarily would have attended the 2020 special session but did not do so because of health concerns arising out of the absence of adequate COVID-19 health and safety protocols. Others who saw video footage of what transpired, including Plaintiff Selene, did not attend the special session at all because of concerns for their health and safety.

69.     Plaintiffs desire to attend and participate in the legislative session beginning on January 11, 2021, but cannot do so if these unsafe conditions continue.  In the upcoming session, the Legislature is scheduled to consider several issues of great importance to Plaintiffs, including proposed cuts to Medicaid, a possible repeal of Medicaid expansion, and the current shortage of direct care workers due to low wages and the pandemic.  In particular, Plaintiff DAC wishes to advocate on Medicaid funding and rural services, including access to transportation and internet. IFHC is seeking to continue advocacy on numerous housing access issues with civil rights implications, including landlord-tenant law, and Idaho's Human Rights Act.  Selene wishes to attend to obtain information regarding health and welfare and social justice issues.  LINC wishes to provide testimony and engage in advocacy on issues related to the need for increased wages for direct care workers and proposed cuts to Medicaid, which would have an outsized impact on the individuals with disabilities whom LINC serves.  These Plaintiffs, however, will be prevented from

---

[6] Keith Ridler, *Crowds shatters glass to get to Idaho House session on virus*, Associated Press (Aug. 24, 2020), https://apnews.com/article/2262f803692a574ec7ede04cc174397f.
[7] *Id.*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 20

appearing to testify, and their participation in the legislative process will be chilled, unless Defendants implement a policy that sufficiently protects their health and safety.

70.     In an attempt to address these unsafe conditions, Plaintiffs have twice sought reasonable modifications from Defendants, but Defendants have rejected these requests.

71.     Specifically, on December 14, 2020, several Plaintiffs and other partner organizations sent a letter to Defendants Bedke and Winder to bring these issues to their attention and request an opportunity to collaborate on solutions.[8]

72.     Defendant Bedke responded by letter on December 21, 2020, enclosing a list of "safety precautions we have already implemented and those we continue to consider."[9]  These precautions, however, are wholly insufficient and effectively abandon any meaningful effort to allow Plaintiffs to participate in the legislative process safely.  Defendant Bedke's protocols do not impose any mandatory rules relating to members of the public despite the obvious unsafe conditions and threat demonstrated in the 2020 special session.  For example, masks are optional for the public and for legislators, and the letter provides no assurance that social distancing will be enforced in the committee rooms.  Similarly, any options for participating in the legislative process through remote means are wholly voluntary for legislators and committee members, and there are no assurances that remote participation will be treated the same as in-person participation, nor are there any instructions for how members of the public, including Plaintiffs, might request the opportunity to participate using remote access technology.

---

[8] Letter to Brad Little, Governor, State of Idaho, et al. (dated Dec. 9, 2020; sent Dec. 14, 2020), attached as Exhibit A.

[9] Letter from Scott C. Bedke, Speaker, Idaho House of Representatives (Dec. 21, 2020) & Attach. ("Idaho House of Representatives, Additional Safety Precautions for 2021 Session"), attached as Exhibit B.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 21

73.    Defendant Winder responded by letter on December 22, 2020.[10]   In that letter, Defendant Winder asserts that "[t]he Idaho Legislature has taken a significant number of steps to protect both legislative members and the public."   However, these protocols are also insufficient; indeed, Defendant Winder admits that they are "similar to the protocols in place during the special session, which, at times, had some problems with enforcement."   Specifically, Defendant Winder states that "[i]ndividuals will be encouraged to wear masks and to socially distance," but he provides no assurances that such precautions will be required.   Moreover, like Defendant Bedke, Defendant Winder states that "Senate committees are being equipped to take remote testimony," but he does not guarantee that committees will be required to provide the option of remote testimony, nor does he provide any further instructions on how members of the public could avail themselves of this option.

74.    Notwithstanding these responses from Defendants Bedke and Winder, the Idaho Legislature's website contains no information describing any health and safety protocols for the public, nor does it provide instructions for requesting or providing remote testimony.

75.    On January 4, 2021, Plaintiffs wrote a follow-up letter to Defendants Bedke and Winder, proposing to engage in further discussion and specifically requesting that Defendants provide reasonable modifications under the ADA and Rehabilitation Act.[11]   Plaintiffs renewed their "request that the Idaho legislature take steps to implement public-health protocols that ensure that such individuals are able to provide in-person testimony and observe legislative sessions and committee hearings at the State Capitol building safely and in a manner that minimizes the risk of

---

[10] Letter from Chuck Winder, President Pro Tempore, Idaho Senate, (Dec. 22, 2020), attached as Exhibit C.

[11] Letter from Wendy J. Olson to Scott Bedke, Speaker of the House, and Chuck Winder, President Pro Tempore of the Senate, *Re: Reasonable Accommodation Request* (Jan. 4, 2021), attached as Exhibit D.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 22

exposure to Covid-19." In addition, Plaintiffs sought "a reasonable accommodation that provides the option for Idahoans with disabilities to testify remotely and to observe legislative business via remote technology."

76.     Defendants Bedke and Winder never responded, necessitating this litigation to protect Plaintiffs' constitutional and statutory rights.

## CLAIMS FOR RELIEF

### COUNT ONE—42 U.S.C. § 1983
### (First and Fourteenth Amendments—Petition for Redress of Grievances)

77.     Plaintiffs incorporate by reference herein Paragraphs 1 through 76.

78.     The First and Fourteenth Amendments to the Constitution of the United States protect Plaintiffs' right to petition their government for redress of grievances.

79.     By implementing and enforcing a policy and engaging in practices that deny basic health and safety protections necessary for Plaintiffs to participate in the 2021 legislative session, Defendants, acting in their official capacity and under color of state law, will, through the conduct described in this Complaint, prevent Plaintiffs from petitioning their government for redress of grievances without legitimate justification. Defendants will thus deprive Plaintiffs of their rights, privileges, or immunities secured by the Constitution of the United States.

80.     If Defendants continue to implement and enforce a policy and engage in practices that deny protections for the health and safety of all persons wishing to participate in the Idaho legislative process, Plaintiffs will be immediately and irreparably injured from the resulting deprivation of First Amendment rights.

### COUNT TWO—Americans with Disabilities Act
### (Title II)

81.     Plaintiffs incorporate by reference herein Paragraphs 1 through 76.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 23

82.    Plaintiffs are qualified individuals with a disability or organizations whose members are qualified individuals with disabilities within the meaning of the ADA. Those disabilities make Plaintiffs or their members particularly susceptible to severe complications from COVID-19.

83.    Because Defendants maintain a policy and engage in practices that deny basic health and safety protections from COVID-19 to persons wishing to participate in the Idaho legislative process, Plaintiffs have been unable to safely access the portions of the Capitol Building under Defendants' control and have been excluded from participating fully and meaningfully in the legislative process. Defendants' policy and practices have a disparate impact on Plaintiffs, whose disabilities put them at greater risk than the general population for serious complications or death from COVID-19.

84.    Accordingly, Plaintiffs have been excluded from participation in or have been denied the benefits of the services, programs, or activities of a public entity on account of their disabilities within the meaning of the ADA.

85.    Although Plaintiffs repeatedly have sought reasonable modifications to allow them to attend and participate in the public proceedings of the State Legislature, Defendants have failed to provide these reasonable modifications or offer any other alternative accommodations.

86.    If Defendants continue to deny Plaintiffs' request for reasonable modifications, Plaintiffs will be immediately and irreparably injured.

### COUNT THREE—Rehabilitation Act
### (Section 504)

87.    Plaintiffs incorporate by reference herein Paragraphs 1 through 76.

88.    Plaintiffs are qualified individuals with a disability or organizations whose members are qualified individuals with a disability within the meaning of Section 504 of the

Rehabilitation Act.  Those disabilities make Plaintiffs or their members particularly susceptible to severe complications from COVID-19.

89.     Defendant Legislature of the State of Idaho is a recipient of federal financial assistance within the meaning of Section 504 of the Rehabilitation Act.

90.     Because Defendants maintain a policy and engage in practices that deny basic protections from COVID-19 to persons wishing to participate in the Idaho legislative process, Plaintiffs have been unable to safely access the portions of the Capitol Building under Defendants' control and have been excluded from participating fully and meaningfully in the legislative process.  These policies and practices have a disparate impact on Plaintiffs, whose disabilities put them at greater risk than the general population for serious complications or death from COVID-19.

91.     Accordingly, Plaintiffs have been excluded from participation in or have been denied the benefits of programs or activities receiving federal financial assistance on account of their disabilities within the meaning of the Rehabilitation Act.

92.     Although Plaintiffs repeatedly have sought reasonable modifications to allow them to view and participate in the public proceedings of the State Legislature, Defendants have failed to provide these reasonable modifications or offer any other alternative accommodations.

93.     As a result of Defendants' failure to provide reasonable modifications, Plaintiffs will be immediately and irreparably injured.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court order the following relief:

(1)     declare, pursuant to 28 U.S.C. § 2201, that, by implementing and enforcing a policy and engaging in practices that deny basic health and safety protections necessary for Plaintiffs to

participate in the 2021 Idaho legislative process, Defendants violate Plaintiffs' First Amendment right to petition their government for redress of grievances;

(2)     declare, pursuant to 28 U.S.C. § 2201, that, by failing to grant a reasonable modification that would allow Plaintiffs to participate safely and fully in the Idaho legislative process, which results in a disparate impact on Plaintiffs, Defendants are in violation of the ADA;

(3)     declare, pursuant to 28 U.S.C. § 2201, that, by failing to grant a reasonable modification that would allow Plaintiffs to participate safely and fully in the Idaho legislative process, which results in a disparate impact on Plaintiffs, Defendants are in violation of the Rehabilitation Act;

(4)     issue an injunction restraining Defendants from implementing and enforcing a policy that denies Plaintiffs their First Amendment rights to petition their government by participating fully and safely in the 2021 Idaho legislative session;

(5)     issue an injunction ordering Defendants to grant a reasonable modification that ensures Plaintiffs can safely and fully participate in the Idaho legislative process; and

(6)     grant other such relief as may be just and proper.


DATED:  January 11, 2021.

STOEL RIVES LLP


 /s/ Wendy J. Olson
Wendy J. Olson
Elijah M. Watkins

Attorneys for Plaintiffs