# Exhibit A



**VIA EMAIL**

Brad Little
Governor, Idaho
PO Box 83720
Boise, ID 83720
governor@gov.idaho.gov

Lawrence Wasden
Attorney General, Idaho
700 W. Jefferson Street, Suite 210
P.O. Box 83720
Boise, ID 83720-0010
lawrence.wasden@ag.idaho.gov

Colonel Kendrick Wills
Director, Idaho State Police
700 S. Stratford Drive
Meridian, ID 83642
colonel.wills@isp.idaho.gov

Keith Reynolds
Director, Idaho Department of Administration
650 West State Street
P.O. Box 83720
Boise, Idaho 83720
keith.reynolds@adm.idaho.gov

Scott Bedke
Speaker of the House
P.O. Box 83720
Boise, ID 83720-0038
sbedke@house.idaho.gov

Chuck Winder
President Pro Tempore of the Senate
P.O. Box 83720
Boise, ID 83720-0081
cwinder@senate.idaho.gov

December 14, 2020

Dear Governor Little, Attorney General Wasden, Colonel Wills, Director Reynolds, Speaker Bedke, and President Pro Tempore Winder:

The Idaho Council on Developmental Disabilities (ICDD) and 30 organizations wish to bring to your attention intimidation, public safety, and public health issues that arose during the legislature's 2020 special session, and to request public guidance and enforcement plans for the upcoming 2021 legislative session. Our hope is to foster a safe environment where individuals with disabilities, family members, and advocates will be assured the ability to testify on important public policy issues presented during the session scheduled to begin on January 11. This, unfortunately, was not the case during the 2020 special session, at which the lack of enforcement

of public health measures related to COVID-19 and the intimidating atmosphere fostered by the presence of armed groups created an environment that did not feel safe for disability-rights advocates, individuals with disabilities, and family members to participate fully in the legislative process.

**Factual Background and Safety Concerns**

During the 2020 special session of the Idaho legislature, disability-rights advocates were deterred from participating in the legislative process because COVID-19 protocols were not enforced and the presence of armed individuals and unlawful militia groups intimidated some members of the public, including ICDD staff.

First, the lax enforcement of mask requirements, social distancing, and other health protocols in the Capitol building placed special burdens on individuals with disabilities, who are at greater risk for serious complications or death from COVID-19. The situation is now becoming more dire, as Idaho recently has experienced a surge in COVID-19 cases. As of 12/13/2020, Idaho reported 547 new cases, bringing the total number of cases the state has had to manage to 121,179.[1] With cases rising and the deaths of at least 1,175 Idahoans from COVID-19, following health measures is essential for public health and welfare. In November, Governor Brad Little announced a return to Stage Two restrictions pursuant to the Idaho Rebounds plan, increasing restrictions to promote health outcomes.[2] Because of the airborne nature of the disease, the risk of transmission is highest in public places, especially indoors or where there is prolonged exposure, but particularly when social distancing, masking, and other measures are not adhered to or enforced,[3] as in the Capitol building during the past session.[4]

Failing to comply with health and safety protocols presents unique risks to those with pre-existing health conditions who are at the highest risk for death related to COVID-19. People with developmental and intellectual disabilities are at higher risk of mortality from COVID-19 because they are more likely to suffer from comorbid chronic conditions, be disproportionately represented as workers in essential services, and are at increased risk of COVID-19 transmission in group residential settings.

---

[1] Idaho COVID-19 Information Updated Daily, Idaho Dep't of Health & Welfare, https://coronavirus.idaho.gov/ (last visited Dec. 13, 2020); Thomas Plank, *Idaho has #1 Test Positivity Rate in US, According to White House Weekly Report*, IDAHO PRESS (Dec. 4, 2020), https://www.idahopress.com/eedition/page-a5/page_99896b55-2869-5846-804b-49c5f7ea601a.html; Nicole Blanchard, Jacob Scholl & Rachel Roberts, *Idaho breaks 2,000 COVID-19 cases in one day, 100 deaths in one week*, IDAHO STATESMAN (Dec. 4, 2020), https://www.idahostatesman.com/news/coronavirus/article247605885.html#storylink=cpy; Donald G. McNeil, Jr., *The Long Darkness Before Dawn*, N.Y. TIMES (Dec. 1, 2020), https://www.nytimes.com/2020/11/30/health/coronavirus-vaccines-treatments.html.
[2] Stay Healthy Order, Idaho Dep't of Health & Welfare (Nov. 14, 2020), https://coronavirus.idaho.gov/wp-content/uploads/2020/11/stage-2-modified-order.pdf.
[3] Harvard Medical School, 5 factors to help you gauge where COVID-19 risk is highest, (Nov. 2020), https://www.health.harvard.edu/staying-healthy/5-factors-to-help-you-gauge-where-covid-19-risk-is-highest.
[4] Chris Cillizza, *Mask-less, armed protesters stormed this state capitol building. Why?*, CNN (Aug. 26,2020),https://www.cnn.com/2020/08/26/politics/idaho-coronavirus-fight-brad-little/index.html.

2

In addition, the presence of armed individuals and unlawful militias at the 2020 special session raised serious security concerns that further deterred participation in the legislative process by disability-rights groups and others.  Armed individuals, some affiliated with self-styled militia groups, have packed committee hearing rooms and created an intimidating and hostile environment.  For instance, during the special session in August, armed, mask-less spectators forced themselves into the Capitol, "shattering a glass door, rushing into the gallery that had limited seating because of the virus, and forcing lawmakers to ask for calm in a crowd that included a man carrying an assault-style weapon."[5]

Both in the "full gallery" and "packed committee rooms," these individuals "ignored social distancing," causing one representative to walk out of a committee meeting "citing unsafe conditions."[6]  These skirmishes resulted in multiple arrests for trespassing and resisting or obstructing officers, including that of Ammon Bundy, who was arrested twice and barred from the state Capitol for a year.  In addition to Bundy's group, People's Rights, "[m]any of the people who showed up . . . were members of the '3 Percenters' or 'Health Freedom Idaho.'"[7]  Confrontations such as these create an unruly and dangerous environment that impedes not only the public discourse, but also the legislature's work.

Collectively, this activity has caused many disability-rights advocates to be concerned about their safety and has squelched their voices on critical issues that will impact the lives of individuals with disabilities and families.  Indeed, ICDD staff members have personally witnessed and felt intimidated by these events.  Some ICDD staff have even opted not to travel to the Capitol to testify because they feared for their health and safety.

Proposed Medicaid cuts, attempts to repeal Medicaid expansion, and lack of direct care workers due to low wages and the pandemic will all be on the 2021 legislative agenda.  People with disabilities and their families and advocates will need to be in force in order to preserve Medicaid and bring their voices to securing a more livable wage for the direct care workforce so critical to maintaining individuals with disabilities' rightful place in their own homes and communities. With the next legislative session quickly approaching, efforts to resolve the critical health and safety issues discussed above are necessary to protect the public's right of access.

---

[5] Keith Ridler, *Crowds shatters glass to get to Idaho House session on virus*, AP (Aug. 24, 2020), https://apnews.com/article/2262f803692a574ec7ede04cc174397f.

[6] *Id.*

[7] Cillizza, *supra* note 4.

**Legal Concerns**

In addition to our practical safety concerns about the environment within the Capitol, the conduct giving rise to these concerns may violate a number of provisions of Idaho and federal law—specifically those that protect public health, ensure the rights of individuals with disabilities, and outlaw private militia activity. Having consulted with the Georgetown University Law Center's Institute for Constitutional Advocacy and Protection (ICAP), we wish to provide the following information about the laws implicated by this conduct.

*Health Regulations*

Idaho law requires compliance with and enforcement of COVID-19 protocols in the State Capitol building. In a recent opinion, the Idaho Attorney General confirmed that the Capitol building and other state property are subject to district health orders, including requirements mandating mask use, social distancing, and limits on the size of public gatherings. Idaho Op. Att'y Gen. No. 20-70562 (Aug. 13, 2020) (2020 AG Opinion). Because health districts have "the same authority, responsibility, powers, and duties in relation to the right of quarantine within the public health district as does the state" and are authorized "to do all things required for the preservation and protection of the public health and preventative health," application of these orders to the Capitol building is not preempted in the same way that county or city health ordinances might be. *Id.* at 4 (quoting Idaho Code § 39-415). "Although the Legislature and the Constitutional Officers have authority over the management and safety of their respective offices, chambers, and meeting rooms," the Attorney General's opinion concluded that "the public areas of the Capitol Building are likely subject to the [Central Health District] Order until that order is rescinded, superseded by the Governor or Director of the Department of Health and Welfare, or exempted by the Idaho Legislature." *Id.* at 5.

The Attorney General's August 13, 2020, opinion was in reference to a Central Health District order dated August 11, 2020, which has now been superseded by the Stay Healthy Order issued by the Governor and Idaho Department of Health on November 14, 2020. The analysis of the Attorney General's opinion should be equally applicable to the current order or any order issued hereafter that supersedes it and is in effect when the legislative session begins in January.

We recognize the legislature is considering the use of audio-visual technology to facilitate social distancing or remote participation in a manner that "safeguard[s] the public's ability to observe and participate in the legislative process."[8] However, to the extent the Capitol building is open to the public, individuals present must comply with state public health orders, at least in the public areas of the Capitol. Failure to comply with such requirements is a misdemeanor. Idaho Code § 56-1003(7)(c); *see also* Idaho Code § 39-419(1) (misdemeanor "for any person, association, or corporation, and the officers thereof to willfully violate, disobey, or disregard the

---

[8] Eric Milstead, Request to the Coronavirus Financial Advisory Committee from the Legislative Services Office, Legislative Services Office (July 7, 2020), https://coronavirus.idaho.gov/wp-content/uploads/2020/07/cfac-lso-request.pdf.

4

provisions of the public health laws or the terms of any lawful notice, order, standard, rule, regulation, or ordinance issued pursuant thereto"). Moreover, although the Attorney General's recent opinion concluded that each house of the Idaho legislature is empowered to impose its own health and safety protocols within its own chamber, offices, and committee rooms, any decision not to impose the state-ordered restrictions would undermine the effectiveness of those protocols and expose vulnerable community members, including those with disabilities, to unnecessary risk of COVID-19 exposure.

Refusing to comply with COVID-19 protocols also likely violates Idaho's public nuisance law. A nuisance is "[a]nything which is injurious to health, or is indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." Idaho Code § 52-101; Idaho Code § 18-5901. A public nuisance affects "an entire community or neighborhood, or by any considerable number of persons," Idaho Code § 52-101, "although the extent of the annoyance or damage inflicted upon individuals may be unequal." Idaho Code § 52-102. Courts have taken a relatively expansive view as to what conduct falls under this definition. *See Newton v. MJK/BJK, LLC*, 469 P.3d 23 (Idaho 2020) (characterizing the definition of "nuisance" as "broad"). Idaho Code § 52-205 provides that public nuisances "may be abated by any public body or officer authorized thereto by law," permitting legal action to remedy violations of health orders that put Idahoans at risk.

*Disability Accommodations*

By failing to provide a safe environment for individuals to attend, observe, or participate in legislative sessions, the legislature may also be violating the rights of disabled individuals with pre-existing conditions that put them at greater risk of severe illness from COVID-19. As the Attorney General noted in his August 13, 2020, opinion, Title II of the Americans with Disabilities Act (ADA) states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any entity." 2020 AG Op. at 7 (quoting 42 U.S.C. § 12132).

The "failure to provide reasonable accommodation can constitute discrimination." *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002). Similarly, Idaho law guarantees that "[i]ndividuals with disabilities have the same rights and privileges as the general public to the full and free use of . . . public buildings, public facilities, and other places of public accommodations." Idaho Code § 56-702. Moreover, it is prohibited to "discriminate against a person . . . on a basis of . . . disability[,]" or against "individuals without disabilities who are associated with a person with disability." Idaho Code § 67-5909. This includes a prohibition on "fail[ing] to make reasonable modifications in policies, practices, or procedures when modifications are necessary to afford… goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of [the same]." Idaho Code § 67-5909(6)(c).

Even facially neutral policies may violate a disabled person's right of access to government activities "when such policies unduly burden disabled persons, even when the policies are consistently enforced." 2020 AG Op. at 7 (citing *McGary v. City of Portland*, 386 F.3d 1259 (9th Cir. 2004)).

The ADA requires that when an individual has a qualifying disability, she is entitled to a reasonable accommodation to allow her to access and participate in public activities, including government meetings and legislative sessions. *See, e.g.*, *Nat'l Ass'n of the Deaf v. Fla.*, No. 18-12786, 2020 WL 6575040, at *6 (11th Cir. Nov. 10, 2020) (applying the Title II of the ADA to require captioning of legislative videos for deaf individuals). As the Attorney General stated, in the context of the COVID-19 pandemic, a qualifying disability "could be a variety of things—either physical conditions that make the individuals at high risk, or anxiety/depression related to COVID-19." 2020 AG Op. at 6. According to the CDC, a number of common medical conditions—including, for example, diabetes, cancer, and heart disease—place adults at increased risk of severe illness from COVID-19.[9] These diseases may themselves qualify as disabilities. Adults with intellectual or developmental disabilities are also significantly more likely than adults without disabilities to have these underlying conditions.[10] The U.S. Equal Employment Opportunity Commission (EEOC) has accordingly opined that for individuals with disabilities that place them at a higher risk of severe illness, reasonable accommodations to mitigate that risk or "reduce chances of exposure" are required under the ADA. What constitutes a reasonable accommodation in a given circumstance requires a "fact-specific inquiry," 2020 AG Op. at 8; *see also A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1207 (9th Cir. 2016) ("When an entity is on notice of the need for an accommodation, it is 'required to undertake a fact-specific investigation to determine what constitutes a reasonable accommodation.'") (citation omitted). Accommodations are generally reasonable unless they "would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens." *Updike v. Multnomah Cty.*, 870 F.3d 939, 950 (9th Cir. 2017) (quoting 28 C.F.R. § 35.164).

*Unlawful Militia Activity*

The presence of armed, self-styled "militia" groups at the Capitol building also violates several provisions of Idaho law. In particular, the Idaho Constitution's Subordination Clause forbids private military units from operating outside state authority, providing that "[t]he military shall be subordinate to the civil power." Idaho Const. art. I, § 12. Other provisions of Idaho law make clear that the Governor of Idaho, as commander-in-chief, is the state official who has the authority to call the unorganized militia (all able-bodied Idaho citizens between the ages of 18

---

[9] Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[10] Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19): People with Disabilities, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-disabilities.html.

and 45) into active service. Idaho Code § 46-106 ("Whenever the governor as commander-in-chief, shall call into the active service of the state the unorganized militia . . . [t]he officers thereof, shall be appointed and commissioned by the governor under such rules and regulations as he may deem expedient to promulgate."); *see also* Idaho Code § 46-110 ("The governor of the state by virtue of his office, shall be commander-in-chief of the national guard, except of such thereof, as may be at times in the service of the United States."); Certificate of Review, Initiative Regarding Volunteer Militia Organizations, Letter from Attorney General of Idaho to Secretary of State of Idaho (Oct. 13, 1995) (declaring as unconstitutional proposed legislation that would have allowed citizens to organize and train as private militias without government oversight, and concluding that the Idaho Constitution requires control of the state militia by the governor and through laws passed by the legislature).

Moreover, Idaho law makes clear that "[n]o body of men, other than the regularly organized national guard, the unorganized militia when called into service of the state, or of the United States . . . shall associate themselves together as a military company or organization, or parade in public with firearms in any city or town of this state." Idaho Code § 46-802. Idaho law further makes it a felony to: (1) conspire "to injure, oppress, threaten or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the constitutions or laws of the United States or the state of Idaho, by the use of violence against the person or property of such citizen"; (2) go on the highway or the premises of any citizen, with another person, "with the intent by use of violence against such citizen or his property, to prevent or hinder his free exercise or enjoyment of any right or privilege so secured"; or (3) assemble "with one (1) or more persons for the purpose of training or instructing in the use of, or practicing with, any technique or means capable of causing property damage, bodily injury or death with the intent to employ such training, instruction or practice in the commission of a civil disorder." Idaho Code § 18-8103.

Idaho law is in keeping with the Second Amendment, which does not protect private, unauthorized paramilitary organizations that are dangerous to public safety and good order. The Supreme Court decided in 1886—and repeated in 2008—that the Second Amendment "does not prevent the prohibition of private paramilitary organizations." *District of Columbia v. Heller*, 554 U.S. 570, 621 (2008) (citing *Presser v. Illinois*, 116 U.S. 252 (1886)). Although individuals have a Second Amendment right to bear arms for individual self-defense, they have no constitutional right to organize themselves as private military units projecting public authority wholly outside of governmental accountability.

*Public Right of Access*

The nonenforcement of COVID-19 protocols and intimidating unlawful militia activity described above also has the effect of chilling the First Amendment rights of individuals, including disability rights advocates, who wish to participate in the legislative process. In the wake of the last session, Governor Little thanked "citizens who came to the Capitol and exercised your First Amendment rights peacefully," but acknowledged the interference caused by "individuals who infringed on an orderly proceeding" and "agitators who seek to stifle civil debate and harm our

democratic republic."[11] Absent steps to enforce health and safety measures and prevent intimidation, the current circumstances materially infringe on the public's right of access to the legislative proceedings.

The right to freedom of speech and to petition elected officials for redress of grievances is enshrined in the First Amendment of the U.S. Constitution, which guarantees "the right of the people . . . to petition the Government for a redress of grievances." *See also* Idaho Const. art. I, § 10 ("The people shall have the right to assemble in a peaceable manner, to consult for their common good; to instruct their representatives, and to petition the legislature for the redress of grievances."). The Supreme Court has characterized "[t]he right of the people peaceably to assemble, for the purpose of petitioning Congress for a redress of grievances" as essential to "[t]he very idea of a government republican in form." *United States v. Cruikshank*, 92 U.S. 542, 547 (1875). The Petition Clause "was inspired by the same ideals of liberty and democracy that gave us the freedoms to speak, publish, and assemble." *McDonald v. Smith*, 472 U.S. 479, 485 (1985) (internal citation omitted). The Founders' vision that citizens be able "to communicate their will through direct petitions to the legislature and government officials" is central to the First Amendment's protections. *Id*.

By failing to enforce Idaho law, those responsible for safety and security in the Capitol building are forcing individuals to choose between exercising their First Amendment rights and protecting their health and safety, placing an impermissible restraint on speech. The Supreme Court has long considered political and ideological speech to be at the core of the First Amendment, including speech concerning "politics, nationalism, religion, or other matters of opinion." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). Moreover, any selective or inconsistent application of these requirements or protections on the basis of the speaker's viewpoint would violate equal protection principles that are "closely intertwined with First Amendment interests." *Police Dept. of City of Chicago v. Mosley*, 408 U.S. 92, 95 (1972) ("[T]he First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter or its content.").

The public's right of access to public meetings is also reflected in the state's open meetings law, which states that "the formation of public policy is public business and shall not be conducted in secret." Idaho Code § 74-201. This provision demonstrates the legislature's commitment to enabling citizen participation and transparent government operations.

---

[11] CBS2 News Staff, *Little thanks Idaho Legislature, citizens and police after special session*, CBS (Aug. 27, 2020), https://idahonews.com/news/local/little-thanks-idaho-legislature-citizens-and-police-after-special-session.

In sum, enforcing federal and state health, disability, and anti-militia laws is necessary to uphold the public's right to safely access and participate in First Amendment-protected activity.  At the Capitol, "the director of the department of administration, or his designee, shall be responsible for security … and has the authority to contract with private contractors to provide security for persons and property."  Idaho Code § 67-1605.  Security guards present at the Capitol are authorized to enforce applicable rules and intervene in situations that threaten health or safety, but may also call upon law enforcement assistance, as necessary.  Responsibility for law enforcement "is vested in the director of the Idaho state police" in coordination with Ada County and Boise City police.  These security and law enforcement services have the authority to address unlawful conduct at the Capitol building and are empowered to ensure the public's safety against acts that violate constitutional or statutory directives.  In partnership with each other and legislative leaders, security and law enforcement officials are vital to maintaining order and decorum.  Ensuring that staff on the ground have the training and resources necessary to remedy these violations is essential to upholding public safety and health, while also preserving the right of access guaranteed under the First Amendment and Idaho law.

***

All Idahoans benefit from the participation of a diverse coalition of people in the legislative process, including individuals with disabilities, disability-rights groups, and family advocates. Enforcing Idaho's COVID-19 protocols and laws prohibiting private militia activity is necessary to ensure such participation.

In keeping with ICDD's goal of supporting leaders with intellectual and developmental disabilities who are engaged and able to voice their opinions on policy issues, we call upon you to take prompt action to address these challenges in advance of the 2021 legislative session.  During the next session, critical legislation on healthcare, disability rights, Medicaid expansion, foster care, and education, among others, are expected to be on the agenda.  These issues affect all Idahoans, but have unique implications for vulnerable populations, especially individuals with disabilities, whose voice is essential in the legislative process.  The active participation of all of our citizens is imperative for democracy to work.  Together, we hope to make the atmosphere at the Idaho Capitol a welcoming and inclusive environment, where no one should feel threatened, intimidated, or fearful of to speak on issues of public and personal importance.  As the session soon approaches, we would appreciate information about the accommodations made on or before the Christmas holiday. We would also request formal communication to the public on the Idaho Legislative website about how members of the public will be afforded the opportunity to engage in a COVID-19 safe legislative environment. We welcome the opportunity to meet with you, share our insight, and collaborate on prospective solutions.

Respectfully,

*Christine Pisani* (signature)

Christine Pisani, Executive Director
Idaho Council on Developmental Disabilities

| | |
|---|---|
| Idaho Association of Community Providers | Boise City/Ada County Housing Authorities |
| Living Independence Network Corporation | NAMI Idaho |
| Idaho Coalition Against Sexual & Domestic Violence | Idaho Caregivers Alliance |
| Access Concepts & Training, Inc. | Center on Disabilities and Human Development |
| Center for Community and Justice | Access Behavioral Health Services, Inc. |
| United Vision for Idaho | Community Council of Idaho, Inc. |
| Idaho State Independent Living Council | Power of Translation |
| Agnew: Beck | Corpus Christi House |
| Center for Independent Living | Disability Action Center- Northwest, Inc. |
| Intermountain Fair Housing Council | Idaho Education Association |
| Idaho Access Project | Idaho Voices for Children |
| North Idaho Children's Community Mental Health | National Association of Social Workers Idaho Chapter |
| Consortium for Idahoans with Disabilities | Idaho Anti-Trafficking Coalition |
| Disability Rights Idaho | Idaho Assistive Technology Project |
| Advocates for Inclusion | Idaho Parents Unlimited |

CC:

| | |
|---|---|
| Mike Moyle<br>House Majority Leader<br>P.O. Box 83720<br>Boise, ID 83720-0038<br>mmoyle@house.idaho.gov | Kelly Arthur Anthon<br>Senate Majority Leader<br>P.O. Box 83720<br>Boise, ID 83720-0081<br>kanthon@senate.idaho.gov |
| Ilana Rubel<br>House Minority Leader<br>P.O. Box 83720<br>Boise, ID 83720-0038<br>irubel@house.idaho.gov | Michelle Stennett<br>Senate Minority Leader<br>P.O. Box 83720<br>Boise, ID 83720-0081<br>mstennett@senate.idaho.gov |
| Greg Chaney<br>House Judiciary, Rules and Administration Committee, Chair<br>P.O. Box 83720<br>Boise, ID 83720-0038<br>gchaney@house.idaho.gov | Todd M. Lakey<br>Senate Judiciary and Rules Committee, Chair<br>P.O. Box 83720<br>Boise, ID 83720-0081<br>tlakey@senate.idaho.gov |
| Fred Wood<br>House Health and Welfare Committee, Chair<br>P.O. Box 83720<br>Boise, ID 83720-0038<br>fwood@house.idaho.gov | Fred Martin<br>Senate Health and Welfare Committee, Chair<br>P.O. Box 83720<br>Boise, ID 83720-0081<br>fmartin@senate.idaho.gov |