William G. Myers III (ISB #5598)
A. Dean Bennett (ISB #7735)
HOLLAND & HART LLP
800 W. Main Street
Suite 1750
Boise, ID 83702-5974
Telephone: (208) 342-5000
Facsimile: (208) 343-8869
Emails:  wmyers@hollandhart.com
         adbennett@hollandhart.com

Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AHNIAH SELENE; KASSIE HOWE; DISABILITY ACTION CENTER – NORTHWEST, INC.; DISABILITY RIGHTS IDAHO; LIVING INDEPENDENCE NETWORK CORPORATION IDAHO; LIFE, A CENTER FOR INDEPENDENT LIVING; INTERMOUNTAIN FAIR HOUSING COUNCIL,<br><br>               Plaintiffs,<br><br>vs.<br><br>LEGISLATURE OF THE STATE OF IDAHO, SCOTT BEDKE, in his official capacity as Speaker of the House of Representatives of the State of Idaho, CHUCK WINDER, in his official capacity as President Pro Tempore of the Idaho State Senate.<br><br>               Defendants. | CASE NO. 1:21-cv-00021-DCN<br><br>**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER OR, IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION [DKT. 2]** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... iii

I.   INTRODUCTION .................................................................................................1

II.  FACTS ..................................................................................................................1

    A.   The Defendants Played No Role in Appropriating the Federal Funds Referenced in the Complaint and Motion..............................................................................1

    B.   House and Senate Rules. ..................................................................................2

        1.   House Rules...............................................................................................2

        2.   Senate Rules ..............................................................................................3

        3.   Mason's Legislative Manual Regarding Committees ...............................3

    C.   Plaintiffs Will be Safe During the Upcoming Legislative Session. ................4

        1.   Defendants Have Made Reasonable Accommodations for In-Person Activities ...................................................................................................4

        2.   Remote Access is Possible in The House and Senate ...............................4

    D.   Interactive Process and Procedural Posture.....................................................6

III. ARGUMENT .........................................................................................................6

    A.   Legal Standard..................................................................................................6

    B.   A Temporary Restraining Order or Preliminary Injunction Would Threaten Principles of Federalism and Separation of Powers. .......................................7

    C.   Plaintiffs Cannot Establish a Likelihood of Success on the Merits...............11

        1.   Plaintiffs Lack Standing .........................................................................11

            a)   Plaintiffs have not suffered an "injury in fact" ................................11

            b)   Plaintiffs cannot satisfy the two remaining prongs of the standing analysis...........................................................................................12

        2.   The Speech or Debate Clause of the Idaho Constitution Grants Defendants Absolute Immunity From This Lawsuit .................................................13

        3.   Plaintiffs' Claims Fail on the Merits ......................................................14

a)  The Rehabilitation Act is Inapplicable.................................................................14

b)  Defendants Have Accommodated Plaintiffs Through the Interactive Process .........................................................................................................15

c)  There is No Evidence of Discrimination..........................................................18

d)  Plaintiffs Are Unlikely to Succeed on First Amendment Claim......................18

D.  Plaintiffs Cannot Establish a Threat of Imminent Irreparable Harm.............................19

E.  The Balance of Equities and Public Interest Favor Defendants. ...................................20

IV.  CONCLUSION................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Batelle Energy Alliance, LLC v. Southfork Sec., Inc.*
    980 F. Supp. 2d 1211 (Idaho 2013) ........................................................ 19

*Bell v. Wolfish,*
    441 U.S. 520 (1979) ..................................................................... 18, 19

*California First Amendment Coal. v. Woodford,*
    299 F.3d 868 (9th Cir. 2002) .............................................................. 19

*Consumers Union of U. S., Inc. v. Periodical Correspondents' Ass'n,*
    515 F.2d 1341 (D.C. Cir. 1975) ......................................................... 13, 14

*Cox v. Corizon Corr. Health Servs.,*
    2019 WL 956793 (D. Idaho Feb. 27, 2019) ................................................. 7

*Doe v. McMillan,*
    412 U.S. 306 (1973) ...................................................................... 13

*Dominion Video Satellite v. Echostar Satellite Corp.,*
    269 F.3d 1149 (10th Cir. 2001) ............................................................ 7

*E. Bay Sanctuary Covenant v. Trump,*
    932 F.3d 742 (9th Cir. 2018) ............................................................. 20

*Frazier v. Kelley,*
    460 F. Supp. 3d 799 (E.D. Ark. 2020) ................................................... 12, 18

*Food & Drug Administration. v. American College of Obstetricians &
    Gynecologists*
    No. 20A34, 2021 WL 99362, at *1 (U.S. Jan. 12, 2021) ................................... 9, 10

*Garcia v. San Antonio Metropolitan Transit Authority,*
    469 U.S. 528 (1985) ...................................................................... 10

*Jacobson v. Fla. Sec'y of State,*
    974 F.3d 1236 (11th Cir. 2020) ........................................................... 13

*Jacobson v. Massachusetts,*
    197 U.S. 11 (1905) ....................................................................... 10

*Kohn v. State Bar of California,*
    2020 WL 6290382 (N.D. Cal. Oct. 27, 2020) .............................................. 14, 18

*L.A. Mem'l Coliseum Comm'n v. NFL*,
   634 F.2d 1197 (9th Cir. 1980) ........................................................................7

*Labossiere v. GMAC Mortgage*,
   2010 WL 2836107 (D. Idaho July 16, 2010) ..........................................19

*Larson v. Iboshi*,
   441 F. App'x 511 (9th Cir. 2011) ............................................................18

*Lewis v. Casey*,
   518 U.S. 343 (1996) ..............................................................................8, 11

*Lewis v. Governor of Alabama*,
   944 F.3d 1287 (11th Cir. 2019) ...............................................................13

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .................................................................................11

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma BmbH & Co.*,
   571 F.3d 873 (9th Cir. 2009) .................................................................7, 8

*Maryland v. King*,
   567 U.S. 1301 (2012) ...............................................................................10

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997) (per curiam) .............................................................6

*McCarthy v. Pelosi*,
   2020 WL 4530611 (D.D.C. Aug. 6, 2020) .........................................13, 14

*McMurry v. Brown*,
   2020 WL 3118567 (W.D. Mich. June 12, 2020) ..................................11, 18

*Money v. Pritzker*,
   453 F. Supp. 3d 1103 (N.D. Ill. 2020) ....................................................18

*Press-Enter. Co. v. Superior Court of California for Riverside Cty.*,
   478 U.S. 1 (1986) ....................................................................................18

*Scentsy, Inc. v. Performance Mfg., Inc.*,
   2009 WL 1033734 (D. Idaho Apr. 16, 2009) .........................................11

*Sierra Club v. Trump*,
   963 F.3d 874 (9th Cir. 2020), cert. granted, No. 20-138, 2020 WL 6121565
   (U.S. Oct. 19, 2020) ................................................................................20

*Simon v. E. Kentucky Welfare Rights Org.*,
   426 U.S. 26 (1976) ..................................................................................11

*Simpson v. Cenarrusa*,
    944 P.2d 1372 (Idaho 1997)...................................................................................14

*South Bay United Pentecostal Church v. Newsom*,
    140 S. Ct. 1613 2020) .........................................................................................9

*Spallone v. United States*,
    493 U.S. 265 (1990)............................................................................................20

*Stevens v. Harper*,
    213 F.R.D. 358 (E.D. Cal. 2002) ..............................................................8, 9, 11

*Stuhlbarg Int'l. Sales Co., Inc. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001) ..............................................................................7

*Swain v. Junior*,
    958 F.3d 1081 (11th Cir. 2020) ....................................................................10, 20

*Swain v. Junior*,
    961 F.3d 1276 (11th Cir. 2020) ..........................................................................20

*United States v. Johnson*,
    383 U.S. 169 (1966)............................................................................................14

*Valentine v. Collier*,
    956 F.3d 797 (5th Cir. 2020) ......................................................................10, 20

*Winter v. Natural Res. Def. Council Inc.*,
    555 U.S. 7 (2008)...........................................................................7, 11, 12, 20

*Yelapi v. DeSantis*,
    2020 WL 6603452 (N.D. Fla. Sept. 15, 2020)....................................................13

*Zimmerman v. Oregon Dep't of Justice*,
    170 F.3d 1169 (9th Cir. 1999) ..........................................................................14

*Zivkovic v. S. California Edison Co.*,
    302 F.3d 1080 (9th Cir. 2002) ................................................................15, 17, 18

## STATUTES

29 U.S.C. § 794(b)(1)(A)............................................................................................14

Idaho Administrative Procedures Act 38.04.08.............................................................4

## OTHER AUTHORITIES

First Amendment ...................................................................................................14, 18

Idaho Constitution ...............................................................................................9, 19

Idaho Constitution Article III, § 7 ..................................................................14

Senate Rule 5 ..................................................................................................3, 4

Senate Rule 20(D) ................................................................................................3

Senate Rule 48 ......................................................................................................3

House Rule 63 ........................................................................................2, 4, 5, 17

House Rule 75 ........................................................................................................3

House Rule 77 ........................................................................................................2

Mason's Manual Section 611 ..............................................................................3

Rehabilitation Act ............................................................................14, 15, 18

The Legislature of the State of Idaho, Scott Bedke, Speaker of the House of Representatives of the State of Idaho ("Speaker"), and Chuck Winder, President Pro Tempore of the Idaho State Senate ("Pro Tem") oppose Plaintiffs' Motion for Temporary Restraining Order or, in the Alternative, Preliminary Injunction [Dkt. 2] ("Motion") and request that the Court deny the Motion in its entirety.  This Opposition is supported by the Declarations of Scott Bedke ("Bedke Decl."), Chuck Winder ("Winder Decl."), Norma Clark ("Clark Decl."), and Eric Milstead ("Milstead Decl."), along with the other pleadings and documents on file.

## I.   INTRODUCTION

This Court should deny the Motion in its entirety.  First, Plaintiffs ask the Court to infiltrate the Idaho Legislature to force the Speaker and Pro Tem to override constitutionally authorized House and Senate Rules and mandate that Committee Chairs allow for remote participation. Second, Plaintiffs want the Court to contravene House and Senate Rules that give the Speaker and Pro Tem authority to control health and safety measures at the Capitol. In short, Plaintiffs want a federal court to dictate how the state legislature conducts the People's business. This requested relief would transgress core principles of government, assuming Plaintiffs could overcome their lack of standing, circumvent Defendants' absolute immunity, and prevail on the merits which, as explained below, they cannot.

## II.   FACTS

### A.   THE DEFENDANTS PLAYED NO ROLE IN APPROPRIATING THE FEDERAL FUNDS REFERENCED IN THE COMPLAINT AND MOTION.

In March 2020, the Governor of the State of Idaho declared a state of emergency based upon the COVID-19 pandemic.  *See* Executive Order 2020-06 at 1; Milstead Decl. ¶ 2; Bedke Decl. ¶ 19.  The Governor subsequently convened a Coronavirus Financial Advisory Committee comprised of 15 members including three state legislators. *Id.*  The Speaker and the Pro Tem

appointed those three state legislators.  *Id.*  The Committee was responsible for reviewing financial proposals and advising the Governor on how to spend federal funds to combat the spread of COVID-19.  *Id.*  The Committee did not control how funds were distributed or spent—the Governor retained ultimate control over the distribution of the funds. Milstead Decl. ¶¶ 2–3; Bedke Decl. ¶ 19.

In July 2020, the Speaker and the Pro Tem sent a letter in support of a funding request made by the Legislative Services Office ("LSO"). Bedke Decl. ¶ 20, Ex. E. But neither Defendant individually nor the Legislature as a whole were responsible for determining how the funds would be distributed or spent, especially as the funds that the LSO ultimately received from the Governor's office were earmarked for the specific purpose of upgrading IT services and equipment. Milstead Decl. ¶¶ 2–3; Bedke Decl. ¶ 20.

**B.**    **HOUSE AND SENATE RULES.**

**1.**    **House Rules**

On December 3, 2020, the entire membership of the House unanimously adopted various House Rules that are relevant to this case.  Bedke Decl. ¶¶ 2, 10–11; Exs. A, B.

First, House Rule 63, entitled, "House Chamber and Spaces, Regulation of," mandates that:

> 2) Supervision of Legislative areas – It is the duty of the Speaker to have general charge and supervision of the House floor, chamber, galleries, office spaces, committee rooms, adjoining and connecting hallways and passages; and to oversee decorum and preserve order therein.

*See id.* Ex. A at 16.

House Rule 77 makes clear, "Adoption of the rules of the House, whether temporary or permanent, will be by a majority vote of the entire membership of the House.  No rules of the House, temporary or permanent, shall be suspended, altered, or amended without the concurrence of two-thirds of the entire membership of the House."  *See id.* Ex. A at 19.

Finally, House Rule 75 states:

> The rules of parliamentary practice set forth in Mason's Manual of
> Legislative Procedures shall govern the House in all cases to which
> they are applicable, and in which they are not inconsistent with the
> Standard Rules and Orders of the House and the Joint Rules and
> Orders of the Senate and House of Representatives.

*See id.* ¶ 10, Ex. A at 19.

### 2.    Senate Rules

On December 3, 2020, the Senate adopted Senate Rules. Winder Decl. ¶ 13, Exs. B, C.

First, Senate Rule 5 mandates that:

> The Chamber, rooms, passages, and corridors of the Senate, during
> the legislative session, shall be under the control of the President
> Pro Tempore.

Winder Decl. ¶ 13, Ex. B at 3.

Second, Senate Rule 20(D) states that: "any person may attend any hearing of such

committee, but may participate in the committee only with the approval of the committee itself."

*See id.*, Ex. B at 10.

Third, Senate Rule 48 states:

> In all cases not herein provided for, and in which they are not
> inconsistent with these rules or the joint rules of the Senate and
> House of Representatives, the general rules of parliamentary
> practice and procedure as set forth in Mason's Manual of
> Legislative Procedure shall govern the proceedings of the Senate.

*See id.*, Ex. B at 22.

### 3.    Mason's Legislative Manual Regarding Committees

Both House Rule 75 and Senate Rule 48 state that the general rules of Mason's Manual of

Legislative Procedure govern the proceedings when they are not inconsistent with the Rules.

Bedke Decl. ¶ 10, Ex. A; Winder Decl. ¶ 13, Ex. B. Mason's Rule 611 states that it is the duty of

a Committee Chair to "maintain order and decide all questions of order." Bedke Decl. ¶ 11.

**C.    PLAINTIFFS WILL BE SAFE DURING THE UPCOMING LEGISLATIVE SESSION.**

Plaintiffs will receive adequate accommodations during the 2021 legislative session.

**1.    Defendants Have Made Reasonable Accommodations for In-Person Activities**

First, pursuant to House Rule 63 and Senate Rule 5, the Speaker and the Pro Tem have implemented protocols to ensure the safety of all who come in-person to the Capitol. For example, all committee rooms have capacity limits and socially distanced seating; masks are recommended; air purifiers have been installed in all committee rooms, conference rooms, and office spaces; hand sanitizer stations are available throughout the building; overflow rooms will be provided; and committee meetings are held on alternate days to minimize the number of members and visitors in the Capitol. Winder Decl. ¶¶ 3–4, Ex. A. Senate leadership will assess public health protocols and enforcement mechanisms in order to make appropriate adjustments throughout the session. *Id.* at ¶¶ 3–5. The House adopted similar measures. Bedke Decl. ¶¶ 4, 18.

Furthermore, the Idaho State Department of Administration has updated its Rules Governing the Use of Idaho State Capitol (Idaho Administrative Procedures Act ("IDAPA") 38.04.08) to better control the use of the Capitol's public spaces. Winder Decl. ¶ 12; Bedke Decl. ¶ 17. These rules govern any uses that interfere with the primary uses of the Capitol, and they prescribe authority to police to establish perimeters separating people in the public use space and direct all persons off Capitol grounds or out of the Capitol. Bedke Decl. ¶ 17. These Rules will help avoid the situation that occurred in August 2020. *See id.*; Winder Decl. ¶¶ 12, 14.

COVID-19 has not spread at the Capitol. Winder Decl. ¶ 14; Bedke Decl. ¶ 18.

**2.    Remote Access is Possible in The House and Senate**

The Defendants have also given all members of the public the opportunity to fully participate remotely in committee business. Bedke Decl. ¶¶ 5–16; Winder Decl. ¶¶ 3, 5–11. As

an initial matter, all committees accept written comments that can be submitted via e-mail and all legislators have publicly available e-mail addresses and telephone numbers.  Winder Decl. ¶ 5. Furthermore, the IT personnel of the LSO have worked on methods for the public to actively participate remotely in House and Senate Committee meetings. Bedke Decl. ¶ 7; Winder Decl. ¶ 8. In particular, the LSO is working on a software application to allow remote participation through a web-based "sign in" process that is similar to the process used for in-person participation in Committee meetings. Bedke Decl. ¶ 8; Winder Decl. ¶ 9; Clark Decl. ¶ 9. The application is expected to be ready for use next month. Bedke Decl. ¶ 8; Clark Decl. ¶ 9. In the meantime, the LSO has the capability to manually set up remote appearances through Zoom at Committee meetings upon request. Bedke Decl. ¶ 9; Winder Decl. ¶¶ 9–10; Clark Decl. ¶¶ 8–10. Members of the public can also watch committee and floor business via a live stream with closed captioning. Winder Decl. ¶¶ 5, 7; Clark Decl. ¶¶ 5–7. To date, Plaintiffs have not requested to participate remotely in a scheduled House or Senate Committee meeting, other than via abstract requests. Bedke Decl. ¶ 14; Winder Decl. ¶ 11.

All Senate Chairs will allow participation by the manual Zoom process if requested, and then via the software application in February 2021. Winder Decl. ¶¶ 5–10; Clark Decl. ¶ 12.

In the House, the Speaker has used his power under House Rule 63 to encourage all House Committee Chairs to allow remote testimony. Bedke Decl. ¶¶ 12–13; Clark Decl. ¶ 13. But under the House Rules, the Committee Chairs have the ultimate power to decide how to direct order and participation in their committees and the Speaker cannot dictate to the Chairs how to run their Committees. Bedke Decl. ¶¶ 10–12. Regardless, all Committee Chairs will use either the manual Zoom process or the software application. *Id*. ¶ 13; Clark Decl. ¶ 13.

D.     **INTERACTIVE PROCESS AND PROCEDURAL POSTURE**

On December 14, 2021, Plaintiffs and other organizations wrote to the Speaker and the Pro Tem, raising concerns about health and safety protocols. Bedke Decl. ¶ 3; Winder Decl. ¶ 2.

On December 21, 2020 the Speaker responded, explaining that the House had implemented safety precautions and was considering more precautions to ensure that the public had equal access to the legislative process. Bedke Decl. ¶ 4, Ex. C. The next day, the Pro Tem responded, describing the Senate's protocols to ensure that members of the public could enjoy remote and in-person access to the legislative process. Winder Decl. ¶¶ 3–5, Ex. A.

In early January via an undated letter, Plaintiffs requested that the policies already in place be modified. Bedke Decl. ¶ 5; Winder Decl. ¶ 6. The Speaker and the Pro Tem were both considering the letter and working diligently on the issues raised in the letter. *See id*. But one week after Plaintiffs sent their letter and before the Speaker and Pro Tem finalized their response and continued the interactive process, Plaintiffs filed this lawsuit and moved for a temporary restraining order and preliminary injunction. *See id.*; Dkt. 1, Compl.; Dkt. 2, Motion.

Nonetheless, the Speaker and the Pro Tem have continued to consider the Plaintiffs' proposals and have taken further action to address Plaintiffs' concerns. Bedke Decl. ¶¶ 5–18; Winder Decl. ¶¶ 6–14.

## III.    ARGUMENT

A.     **LEGAL STANDARD.**

Injunctive relief is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (citation omitted).  A preliminary injunction and a temporary restraining order generally serve the same purpose of "preserv[ing] the status quo ante

litem pending a determination of the action on the merits." *L.A. Mem'l Coliseum Comm'n v. NFL,* 634 F.2d 1197, 1200 (9th Cir. 1980).

The standard for obtaining a preliminary injunction or a temporary restraining order is the same. *See Stuhlbarg Int'l. Sales Co., Inc. v. John D. Brush & Co*., 240 F.3d 832, 839 n.7 (9th Cir. 2001). In either case, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council Inc*., 555 U.S. 7, 20 (2008). Plaintiffs' right to relief under these factors "must be clear and unequivocal." *Cox v. Corizon Corr. Health Servs*., 2019 WL 956793, at *1 (D. Idaho Feb. 27, 2019) (quoting *Dominion Video Satellite v. Echostar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001)).

A mandatory injunction which "orders a responsible party to take action" goes well beyond maintaining the status quo and is particularly disfavored. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma BmbH & Co*., 571 F.3d 873, 878–79 (9th Cir. 2009). "In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Id*. (citations and quotation marks omitted).

## B.   A TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION WOULD THREATEN PRINCIPLES OF FEDERALISM AND SEPARATION OF POWERS.

Plaintiffs seek a court order imposing two injunctive remedies: (1) the Speaker and Pro Tem override the House and Senate Rules and mandate that Committee Chairs allow for remote participation and testimony during committee hearings; and (2) the implementation of mandatory health and safety measures in contravention of House and Senate Rules allocating to the Speaker and Pro Tem the authority to control those measures. *See* Dkt. 2-1, Memo. in Supp. of Mot. at

18.  This, then, is a mandatory injunction that is "particularly disfavored." *Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879.

Here, the requested relief would jeopardize principles of federalism and separation of powers.  "In general, injunctive relief is to be used sparingly, and only in a clear and plain case, especially when the court is enjoining the conduct of a state agency."  *Stevens v. Harper*, 213 F.R.D. 358, 367 (E.D. Cal. 2002) (internal citations and quotation marks omitted).  This reflects both federalism and separation of powers principles, as an injunction ordered by a federal court and directed to the state legislature affects the balance between both state and federal governments and different branches of government.  *See id*.  As such, "general questions of institutional management and reform" must be left to the legislative branch; and plaintiffs must do more than allege that a governmental institution is 'not organized or managed properly' to seek injunctive relief."  *Id*. (quoting *Lewis v. Casey*, 518 U.S. 343, 350–51 (1996)).

If the Court grants the Plaintiffs' Motion, the Court will unilaterally remove power that was lawfully granted to the Speaker, Pro Tem, and Committee Chairs by Idaho's Constitution and the Rules of the House and Senate. Article III, § 9 of Idaho's Constitution empowers the House and Senate to "determine its own rules of proceeding."  Under this authority, the House and Senate adopted rules for the 2021 Regular Session during their Organizational Sessions held in early December. *See* Winder Decl. ¶ 13, Exs. B, C; Bedke Decl., Exs. A, B. The Speaker is entitled to the "general charge and supervision" of the House areas of the Capitol, and the Pro Tem has the "control" of the Senate areas. Winder Decl. ¶ 13, Ex. B at 3; Bedke Decl. ¶¶ 2, 10, Ex. A at 16. The House and Senate Rules, through incorporation of Mason's Legislative Manual, also dictate that Committee Chairs direct proceedings, including remote proceedings. Winder Decl. ¶ 13, Ex. B at 22; Bedke Decl. ¶¶ 10–11, Ex. A at 19. These powers were granted to the

Defendants and Committee Chairs by the Idaho Constitution and the adoption of the rules by the

Representatives and Senators, and they represent the will of the people of Idaho. *See id.* Forcing

the Defendants and the Committee Chairs to implement the requested accommodations would

usurp their power and, in effect, be contrary to both the Idaho Constitution and the will of the

people of Idaho. The proper vehicle to change the House and Senate Rules is through legislative

action—avenues that Plaintiffs have chosen not to pursue. Plaintiffs' grievances with the

"institutional management and reform" contemplated by the House and Senate Rules must be left

to the legislative branch to resolve.  *See Stevens*, 213 F.R.D. at 367.

Over the past year, the United States Supreme Court has recognized that there are

powerful reasons for courts to defer to local officials regarding emergency public-health matters.

On January 12, 2021, in *Food & Drug Administration. v. American College of Obstetricians &*

*Gynecologists*, the Supreme Court granted an application for a stay of a preliminary injunction,

with Chief Justice Roberts concurring and writing the following:

> The question is instead whether the District Court properly ordered
> the Food and Drug Administration to lift those established
> requirements because of the court's own evaluation of the impact
> of the COVID–19 pandemic. Here as in related contexts
> concerning government responses to the pandemic, my view is that
> courts owe significant deference to the politically accountable
> entities with the background, competence, and expertise to assess
> public health.

No. 20A34, 2021 WL 99362, at *1 (U.S. Jan. 12, 2021) (citation and quotation marks omitted).

Similarly, in *South Bay United Pentecostal Church v. Newsom*, the Supreme Court

denied an application for injunctive relief regarding a governor's order that combatted the spread

of COVID-19. 140 S. Ct. 1613 (2020). Chief Justice Roberts, concurring in the denial of the

application, explained that "[t]he precise question of when restrictions on particular social

activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to

reasonable disagreement." *Id.* He continued, "[o]ur Constitution principally entrusts "[t]he safety and the health of the people" to the politically accountable officials of the States "to guard and protect." *Id.* (citing *Jacobson v. Massachusetts*, 197 U.S. 11, 38 (1905)). Justice Roberts further noted, "[w]here those broad limits are not exceeded, they should not be subject to second-guessing by an 'unelected federal judiciary,' which lacks the background, competence, and expertise to assess public health and is not accountable to the people." *Id.* (citing *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 545 (1985)). In conclusion, Justice Roberts stated, "[t]hat is especially true where, as here, a party seeks emergency relief in an interlocutory posture, while local officials are actively shaping their response to changing facts on the ground. The notion that it is 'indisputably clear' that the Government's limitations are unconstitutional seems quite improbable." *Id.*

Chief Justice Roberts' opinions were not written in a vacuum—courts have generally avoided commandeering the role of elected officials during the COVID-19 pandemic. This is because injunctions prevent nimble responses to the virus in an ever-changing landscape, put the focus on compliance with the order and avoiding contempt rather than squarely on combatting the contagion, and turn the federal judge into the role of administrator. *See Valentine v. Collier*, 956 F.3d 797, 803 (5th Cir. 2020) (observing that "the district court's injunction prevents the State from effectuating the Legislature's choice and hence imposes irreparable injury."); *see also Swain v. Junior*, 958 F.3d 1081, 1090 (11th Cir. 2020); *Maryland v. King*, 567 U.S. 1301, at *3 (2012) (Roberts, C.J., in chambers).

A federal court-ordered restraining order or injunction in this matter would impinge on these fundamental concepts of federalism and separation of powers.

**C.      PLAINTIFFS CANNOT ESTABLISH A LIKELIHOOD OF SUCCESS ON THE MERITS.**

A party seeking injunctive relief must show a likelihood of success on the merits. *See Winter*, 555 U.S. at 20. In making this determination, the Court may not presume the truth of the facts pleaded by Plaintiffs. *See Scentsy, Inc. v. Performance Mfg., Inc.,* 2009 WL 1033734, at *3 (D. Idaho Apr. 16, 2009*)* (denying entry of preliminary injunction in dispute involving trade secrets). For the reasons explained below, Plaintiffs are unlikely to succeed on their claims.

**1.      Plaintiffs Lack Standing**

First and foremost, Plaintiffs lack standing to bring any claim. To have standing, a plaintiff must have suffered an injury in fact which is "concrete and particularized" and "actual or imminent," rather than "conjectural or hypothetical." *See Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992) (internal citations and quotation marks omitted). The injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of a third party. *Id.* at 560–61. Finally, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.* at 561 (quoting *Simon v. E. Kentucky Welfare Rights Org*., 426 U.S. 26, 38 (1976)). As explained in more detail below, Plaintiffs have not alleged facts supporting even one prong of the standing analysis.

**a)      Plaintiffs have not suffered an "injury in fact"**

Here, the alleged injury—exposure to COVID-19—is hypothetical rather than "concrete and particularized." *See Lujan*, 504 U.S. at 560. Without establishing a personal risk of imminent harm, Plaintiffs may not "ask the court to supplant the primary reform and oversight responsibilities of state legislative … by making generalized complaints of institutional failures." *See Stevens*, 213 F.R.D. at 367 (citing *Lewis*, 518 U.S. at 349–50). Courts across the country have concluded that claims involving action or inaction in combating the COVID-19 risk are too speculative to succeed when the allegations are as sparse as they are here. *See, e.g., McMurry v.*

*Brown*, 2020 WL 3118567, at *10 (W.D. Mich. June 12, 2020); *Frazier v. Kelley*, 460 F. Supp. 3d 799, 844 (E.D. Ark. 2020).

Here, though Defendants have not implemented all of Plaintiffs' requested accommodations, Plaintiffs are still unlikely to be harmed. Yesterday, Dr. David C. Pate filed a Declaration in support of Plaintiffs but lacking from that Declaration is any acknowledgment of the robust opportunities for Plaintiffs to participate in the legislative process remotely. Winder Decl. ¶¶ 3–5, 7–11; Bedke Decl. ¶¶ 4–9, 12–16; Clark Decl. ¶¶ 5–14. Plaintiffs have not identified any concrete basis for which they must be physically present at the Idaho Capitol and have not had any remote accommodation request to a Committee Chair be denied. Bedke Decl. ¶ 14; Winder Decl. ¶ 11. All "requests" exist only in the abstract. *Id*. Further, the Declaration does not address the fact that there has been COVID testing of staff, or that there have been no infections traceable to the Capitol.  Bedke Decl. ¶ 18; Winder Decl. ¶ 14. There is no evidence that anyone in the Legislature or otherwise in attendance at the Capitol has COVID-19. In light of the accommodations that are being provided, Plaintiffs have not shown a likelihood that they are at a high risk of exposure. *See Winter*, 555 U.S. at 22. At bottom, Plaintiffs' concerns of exposure to COVID-19 are conjectural and hypothetical rather than "concrete and particularized" and "actual or imminent."

> **b)     Plaintiffs cannot satisfy the two remaining prongs of the standing analysis**

Plaintiffs cannot demonstrate that their inability to access the legislature remotely is traceable to Defendants' conduct, nor that they have the unrestrained power (absent the necessary votes) to redress Plaintiffs' concern.

The Complaint asserts that Defendants are responsible for denying Plaintiffs the right to virtually participate in legislative proceedings, but this is demonstrably false. Courts have

dismissed similar cases against public officials in which the plaintiff could not trace their injury to the defendant and the defendant lacked authority to redress the injury.  *See*, *e.g.*, *Yelapi v. DeSantis*, 2020 WL 6603452, at \*4–6 (N.D. Fla. Sept. 15, 2020); *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1252–58 (11th Cir. 2020); *Lewis v. Governor of Alabama*, 944 F.3d 1287, 1296– 1306 (11th Cir. 2019). Here, the House and Senate have already arranged for members of the public to remotely participate in legislative proceedings. Winder Decl.  ¶¶ 5, 7–10; Clark Decl. ¶ 12–14; Bedke Decl. ¶¶ 11–16. Though some House Committee Chairs are choosing to wait a few weeks until the software application goes "live" before allowing remote participation, under the House Rules, the ultimate decision regarding whether to allow remote access in a committee lies with the Committee Chair, not the Speaker. Bedke Decl. ¶¶ 10–13. The Speaker cannot unilaterally change these Rules.  Bedke Decl. ¶¶ 10–11, Ex. A at 19.  Because Defendants are not responsible for denying Plaintiffs the right to virtually participate, Plaintiffs lack standing.

### 2. The Speech or Debate Clause of the Idaho Constitution Grants Defendants Absolute Immunity From This Lawsuit

The Idaho Speech or Debate clause precludes Plaintiffs' suit.  The Speech or Debate Clause of the United States Constitution applies to "all legislative acts."  *McCarthy v. Pelosi*, 2020 WL 4530611, at \*6 (D.D.C. Aug. 6, 2020) (quoting *Doe v. McMillan*, 412 U.S. 306, 312 (1973)). In *McCarthy*, the court denied a motion for a preliminary injunction and dismissed a lawsuit brought by members of the House of Representatives who questioned the House's internal rules, concluding that the Speech or Debate Clause imposed absolute civil immunity.  *Id.* at \*1. The court found that the defendants could not be sued based on their administration of internal House rules because they took part in an "integral part of the legislative machinery" and consequently enjoyed absolute immunity.  *Id.* at \*6–9 (quoting *Consumers Union of U. S., Inc. v. Periodical Correspondents' Ass'n*, 515 F.2d 1341, 1350 (D.C. Cir. 1975)).

The Idaho Speech or Debate Clause is found in Article III, § 7 of the Idaho Constitution and it is interpreted generally the same as its federal corollary. *See Simpson v. Cenarrusa*, 944 P.2d 1372, 1375 (Idaho 1997). The clause is "a shield against civil liability for legislators during the legislative session." *Id.* at 1374. "The privilege was not born primarily of a desire to avoid private suits ... but rather to prevent intimidation by the executive and accountability before a possibly hostile judiciary." *Id.* at 1375 (quoting *United States v. Johnson*, 383 U.S. 169, 180–81 (1966)). This lawsuit concerns the Plaintiffs' general unhappiness with House and Senate Rules that confer authority to the Speaker, Pro Tem, and Committee Chairs. But, just as in *McCarthy*, the Defendants' role in voting for and following Rules regarding the regulation of the spaces of the Capitol and how members of the public participate in legislative acts are "an integral part of the legislative machinery," and so Defendants are entitled to absolute immunity. *See* 2020 WL 4530611, at *6–9 (quoting *Consumers Union of U. S., Inc.,* 515 F.2d at 1350).

### 3.  Plaintiffs' Claims Fail on the Merits

Even if the Court determines that Plaintiffs have standing to proceed and that Defendants are not entitled to absolute immunity, Plaintiffs nonetheless cannot succeed on their claims under the Rehabilitation Act, Title II of the ADA, or the First Amendment of the Constitution.

### a)  The Rehabilitation Act is Inapplicable

First, the Rehabilitation Act does not apply in this case. The Rehabilitation Act imposes obligations only on programs that receive federal financial assistance. *See Kohn v. State Bar of California*, 2020 WL 6290382, at *9 (N.D. Cal. Oct. 27, 2020); *Zimmerman v. Oregon Dep't of Justice*, 170 F.3d 1169, 1181 (9th Cir. 1999); 29 U.S.C. § 794(b)(1)(A). If a defendant does not receive federal funds and has no discretion in how federal funds are spent, the defendant cannot be held liable under the Rehabilitation Act. *See Kohn*, 2020 WL 6290382, at *9–10. Here, the Governor designated federal funds to the LSO—not the Defendants—to upgrade its IT services

and equipment. Bedke Decl. ¶ 20; Milstead Decl. ¶¶ 2–3. Defendants had no role in deciding

how the LSO spent the funds. *See id.* True, the Speaker and Pro Tem urged the Governor to

award the legislature funds based on the LSO's proposal, but this does not mean that they played

a role in appropriating or spending the funds.  Bedke Decl. ¶ 20, Ex. E; Milstead Decl. ¶¶ 2–3.

Accordingly, Defendants cannot be sued under the Rehabilitation Act.

   **b) Defendants Have Accommodated Plaintiffs Through the Interactive
    Process**

   Assuming for the sake of argument that Plaintiffs have disabilities within the meaning of

the ADA and Rehabilitation Act (or are organizations representing qualified individuals with

disabilities), their claim that Defendants failed to accommodate those disabilities nonetheless fail

as a matter of law for several reasons.

   First, Defendants adequately used the interactive process to ensure that Plaintiffs received

reasonable accommodations. The interactive process requires: (1) direct communication between

the entity and individual to explore in good faith the possible accommodations; (2) consideration

of the individual's request; and (3) offering an accommodation that is reasonable and effective.

*See Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (internal citations

omitted). Liability for failure to provide reasonable accommodations ensues only where the

[entity] bears responsibility for the breakdown in the interactive process." *Id.* (internal quotation

marks omitted). When Plaintiffs first brought their concerns to the Speaker and Pro Tem in

December 2020 (after the House and Senate Rules were adopted), the Speaker and Pro Tem

seriously considered the concerns and responded via letter. Bedke Decl. ¶¶ 2–4, Ex. C; Winder

Decl. ¶¶ 2–5, Ex. A. The Speaker and Pro Tem laid out the many health and safety protocols that

were being implemented. *See id.* Then, last week, Plaintiffs sent a follow-up letter requesting

additional accommodations. Bedke Decl. ¶ 5; Winder Decl. ¶ 6. The Speaker and Pro Tem were

both considering the letter and working diligently on a response. *See id*. But before the Speaker and Pro Tem could finalize their response and continue the interactive process, Plaintiffs filed this lawsuit.  *See id.*; Dkt. 1, Compl. The Speaker and the Pro Tem have continued to consider Plaintiffs' proposals and have taken further action to address Plaintiffs' concerns. Bedke Decl. ¶¶ 5–18; Winder Decl. ¶¶ 6–14. In particular, Defendants have worked hard to increase the accessibility of remote participation in the legislative process. *See id.*

Second, Defendants have offered reasonable accommodations. For members of the public who wish to attend the Capitol in person, all committee rooms have capacity limits and socially distanced seating; masks are recommended; air purifiers have been installed in all committee rooms, conference rooms, and office spaces; hand sanitizer stations are available throughout the building; overflow rooms will be provided; and committee meetings are held on alternate days to minimize the number of members in the Capitol. Winder Decl. ¶¶ 3–4, Ex. A. Senate leadership will assess public health protocols and enforcement mechanisms in order to make appropriate adjustments. *See id*. ¶¶ 3–5. The House has adopted similar measures. Bedke Decl. ¶ 4.

Furthermore, the Idaho State Department of Administration has updated its Rules to better control the use of the Capitol's public spaces and prevent a repeat of the August 2020 situations. Winder Decl. ¶ 12; Bedke Decl. ¶ 17.  This includes a working agreement with the Boise Police Department to provide assistance. Winder Decl. ¶ 12.

Defendants have also offered reasonable accommodations to members of the public who wish to participate remotely in the legislative process. All committees will accept written comments, which can be submitted via e-mail, and all legislators have publicly available e-mail addresses and telephone numbers.  Winder Decl. ¶ 5. Furthermore, the IT personnel of the LSO has been working on methods for the public to actively participate remotely in Committee

meetings. Bedke Decl. ¶ 7; Winder Decl. ¶ 8. The LSO is working on a software application to allow remote participation through a web-based "sign in" process that is similar to the process used for in-person participation in Committee meetings. Bedke Decl. ¶ 8; Winder Decl. ¶ 9; Clark Decl. ¶ 9. The application is expected to be ready for use in February 2021, so, in the meantime, IT personnel of the LSO can set up remote appearances through Zoom at Committee meetings upon request. Bedke Decl. ¶ 9; Winder Decl. ¶¶ 9–10; Clark Decl. ¶¶ 8–14. Members of the public can also watch committee and floor business via a live stream with closed captioning. Winder Decl. ¶¶ 4, 7; Clark Decl. ¶¶ 5–7.

All Senate Chairs will allow remote participation through the manual Zoom process if requested, and later through the software application. Winder Decl. ¶¶ 5, 7–10; Clark Decl. ¶ 12.

As for the House, the Speaker has used his power under House Rule 63 to encourage all House Committee Chairs to allow for remote testimony. Bedke Decl. ¶¶ 10–12; Clark Decl. ¶ 13. All Committee Chairs have agreed to allow remote participation through either the Zoom process or the software application. Bedke Decl. ¶ 13. Though some Committee Chairs are choosing to wait until the software application is available, under the House Rules, the Committee Chairs have the ultimate power to decide how to direct participation in their committees and the Speaker cannot dictate to the Chairs how to run their Committees. Bedke Decl. ¶¶ 10–13.

Third, given the reasonable accommodations implemented by the Defendants, the remaining accommodations that Plaintiffs have requested are unreasonable. The law does not require an entity to provide an accommodation that an individual requests or prefers; instead, the law requires only a reasonable accommodation. *See Zivkovic*, 302 F.3d at 1089. Though Plaintiffs wish for the Legislature to implement additional precautions identified by the Centers for Disease Control and Prevention, declining to do so is not unreasonable or legally suspect.

After all, the CDC Guidelines are interim guidance for institutions and not a legal mandate. *See Bell v. Wolfish*, 441 U.S. 520, 543 n.27 (1979). Plaintiffs do not argue that any legislator or other person at the Capitol has COVID-19 and will expose them to the virus. In the absence of these allegations, coupled with the accommodations that Defendants have implemented, Plaintiffs' request for additional measures is unreasonable. *See McMurray v. Brown*, 2020 WL 3118567, at *10 (W.D. Mich. June 12, 2020); *Larson v. Iboshi*, 441 F. App'x 511, 514 (9th Cir. 2011).

Defendants have directly communicated with the Plaintiffs in good faith, explored possible accommodations, considered Plaintiffs' requests, offered accommodations that are reasonable and effective, and are not responsible for a breakdown in the interactive process, so Defendants are not liable for failing to accommodate Plaintiffs. *See Zivkovic*, 302 F.3d at 1089.

### c)      There is No Evidence of Discrimination

Plaintiffs' discrimination claims under the Rehabilitation Act and ADA fail as a matter of law because there is no evidence of discrimination.  If there is no evidence of intentional discrimination, the policies at issue apply equally to all, and there is no disproportionate effect on disabled persons, a discrimination claim fails. *See Kohn*, 2020 WL 6290382, at *6–8; *Money v. Pritzker*, 453 F. Supp. 3d 1103, 1132–33 (N.D. Ill. 2020).  Here, there is no evidence of intentional discrimination. Every person is treated equally under the Rules and policies, Plaintiffs have not been singled out, and the rules have not had a disproportionate impact on disabled individuals.  Plaintiffs have not shown discrimination. *See McMurry*, 2020 WL 3118567, at *10; *Frazier v. Kelley*, 460 F. Supp. 3d 799, 844 (E.D. Ark. 2020).

### d)      Plaintiffs Are Unlikely to Succeed on First Amendment Claim

Plaintiffs First Amendment claim will fail as a matter of law. There is a First Amendment right of access to the Capitol, legislative, proceedings, and committee meetings because they have historically been open and public access plays a significant and positive role. *See Press-*

*Enter. Co. v. Superior Court of California for Riverside Cty.*, 478 U.S. 1, 8 (1986). If Defendants

restrict access, they must provide "an overriding interest based on findings that closure is

essential to preserve higher values and is narrowly tailored to serve that interest." *California*

*First Amendment Coal. v. Woodford*, 299 F.3d 868, 877 (9th Cir. 2002).

 As explained in detail in Section II(C)(3)(b) and elsewhere in this Opposition,

Defendants are not restricting access to the legislative process—they have implemented

reasonable accommodations to ensure that the public can access the legislative process in-person

and remotely.

 Even though Defendants have not implemented every one of Plaintiffs' proposed

accommodations, they have not violated the Constitution per se. *See Bell*, 441 U.S. at 543 n.27.

The Speaker has an "overriding interest" in refusing to direct Committee Chairs to allow remote

participation via Zoom: his inability to contravene the House Rules (enacted pursuant to the

Idaho Constitution) delegating to the Committee Chairs the power to make decisions regarding

Committee participation. And the Speaker and Pro Tem have "overriding interests" in deferring

to the authorized and trained police to determine whether individuals have violated Idaho's

regulations maintaining safety and security of the Capitol. Winder Decl. ¶ 12; Bedke Decl. ¶ 17.

**D.** **PLAINTIFFS CANNOT ESTABLISH A THREAT OF IMMINENT IRREPARABLE HARM.**

 To support a preliminary injunction, the threat of irreparable harm must be immediate.

*See Battelle Energy Alliance, LLC v. Southfork Sec., Inc.*, 980 F. Supp. 2d 1211, 1220 (Idaho

2013) (citation omitted). Courts refuse to grant temporary restraining orders and preliminary

injunctions based on allegations of harm that are speculative and conjectural.  *See Labossiere v.*

*GMAC Mortgage*, 2010 WL 2836107, at *4 (D. Idaho July 16, 2010). As explained in Section

II(C)(1)(a) of this Opposition, the Plaintiffs' alleged harm is speculative rather than imminent

and irreparable.

E.     THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR DEFENDANTS.

A court may not issue an injunction unless the balance of equities and public interest tip in favor of the moving party.  *Winter*, 555 U.S. at 20.  Here, an injunction would force the Speaker and Pro Tem to violate constitutionally authorized rules of the chambers and take control of internal Committee procedures. A court order mandating that the Speaker and Pro Tem take further action regarding mask wearing and social distancing is unnecessary and would subject the Defendants to an undue burden. These restrictions on the Speaker and Pro Tem undermine the public good. *See Spallone v. United States*, 493 U.S. 265, 279 (1990).

Moreover, elected representatives would be harmed by the Court usurping their authority to allocate power to the Speaker, Pro Tem, and Committee Chairs via their House and Senate Rules, especially during a pandemic. *See Valentine*, 956 F.3d at 803; *Swain*, 958 F.3d at 1090. "The public has an important interest in 'ensuring that statutes enacted by their representatives are not imperiled.'"  *Sierra Club v. Trump*, 963 F.3d 874, 895 (9th Cir. 2020), cert. granted, No. 20-138, 2020 WL 6121565 (U.S. Oct. 19, 2020) (quoting *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018)).  And the public interest "favors a proper allocation of public-health resources—an allocation that politically accountable (and often local) officials are best equipped to make." *Swain v. Junior*, 961 F.3d 1276, 1293 (11th Cir. 2020).

Plaintiffs will not experience substantial hardship if the Court denies relief.  Defendants and the Idaho State Department of Administration have offered solutions to Plaintiffs' concerns about in-person and remote access. Bedke Decl. ¶¶ 3–18; Winder Decl. ¶¶ 2–14.

Accordingly, the balance of equities and public interest tip in favor of Defendants.

## IV.     CONCLUSION

Defendants respectfully request that the Court deny Plaintiffs' Motion.

Respectfully submitted this 14th day of January, 2021.

HOLLAND & HART LLP

By    _____*/s/ A. Dean Bennett*_____
        William G. Myers III, of the firm
        A. Dean Bennett, of the firm

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 14th day of January, 2021, I filed the foregoing electronically through the CM/ECF system, which caused all parties of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

| | |
|---|---|
| Wendy J. Olson | wendy.olson@stoel.com |
| Elijah M. Watkins | elijah.watkins@stoel.com |
| Mary B. McCord | mbm7@georgetown.edu |
| Amy L. Marshak | as3397@georgetown.edu |
| Annie L. Owens | ao700@georgetown.edu |
| Seth Wayne | sw1098@georgetown.edu |

_____*/s/ A. Dean Bennett*_____
A. Dean Bennett for HOLLAND & HART LLP

16023880_v2